JOHNSTON v. STATE OF N.C.

[224 N.C. App. 282 (2012)]

———

RICHARD M. JOHNSTON, Plaintiff
v.
THE STATE OF NORTH CAROLINA, Defendant

No. COA12-45

Filed 18 December 2012

**1. Appeal and Error—interlocutory orders and appeals—substantial right—State's right to enforce criminal laws**

The trial court's memorandum of decision and judgment of 24 October 2011 was an appealable interlocutory order. The State has a substantial right to enforce the criminal laws of North Carolina, and this right was affected by a ruling declaring a statute, The North Carolina Felony Firearms Act, to be unconstitutional.

**2. Declaratory Judgments—subject matter jurisdiction—felon's right to possess firearms**

The trial court had subject matter jurisdiction over plaintiff's declaratory judgment action. This was not the first case in which a convicted felon sought a declaration from the courts that he has a right to possess firearms.

**3. Constitutional Law—United States—right to bear arms—substantive due process—North Carolina Felony Firearms Act**

The portion of the trial court's order concluding that the North Carolina Felony Firearms Act, as applied to plaintiff, violated substantive due process rights guaranteed by the United States Constitution was reversed. As to the federal substantive

JOHNSTON v. STATE OF N.C.

[224 N.C. App. 282 (2012)]

due process issue, the case was remanded to the trial court to give the State an opportunity to present evidence and argument on this question and for plaintiff to respond.

**4. Constitutional Law—North Carolina—right to bear arms—substantive due process—North Carolina Felony Firearms Act**

The portion of the trial court's order concluding that the North Carolina Felony Firearms Act, as applied to plaintiff, violated substantive due process rights guaranteed by the North Carolina Constitution was reversed and remanded for the trial court to take evidence and make additional findings.

**5. Constitutional Law—right to bear arms—procedural due process—North Carolina Felony Firearms Act**

The portion of the trial court's order concluding that the North Carolina Felony Firearms Act, on its face, violated procedural due process rights guaranteed by the State and federal Constitutions was reversed.

Judge BEASLEY concurring in part and dissenting in part.

Appeal by defendant from judgment entered 24 October 2011 by Judge Abraham Penn Jones in Caswell County Superior Court. Heard in the Court of Appeals 9 May 2012.

*Dan L. Hardway Law Office by Dan L. Hardway for plaintiff-appellee.*

*Attorney General Roy Cooper by Special Deputy Attorney General John J. Aldridge, III for the State.*

STEELMAN, Judge.

The North Carolina Felony Firearms Act (Act) does not violate plaintiff's procedural due process rights under the Constitution of the State of North Carolina or the Constitution of the United States. We remand plaintiff's federal substantive due process claim to the trial court for consideration of additional evidence and application of the appropriate standard of review. We remand plaintiff's State substantive due process claim to the trial court for additional evidence and findings.

**JOHNSTON v. STATE OF N.C.**

[224 N.C. App. 282 (2012)]

## I.  Factual and Procedural History

On 17 August 2010, Richard Johnston (plaintiff) filed a complaint in the superior court of Caswell County seeking a declaratory judgment that the Act (Article 54A of Chapter 14 of the North Carolina General Statutes) was unconstitutional on its face and as applied to him. The complaint alleged that in 1978, plaintiff was convicted of the felony of conspiracy to commit larceny in Rockingham County[1] and that in 1981, he was convicted of the felonies of arson, conspiracy to burn a building, and fraud in Caswell County. Plaintiff alleged that his probation and suspended sentences were concluded by 1983. The complaint also sought a declaration that his right to bear arms "was fully restored by operation of law on January 27, 1988, and that such restoration has remained in full force and effect from that time to the present and continuing thereafter[.]" Plaintiff also prayed for compensatory damages and attorney's fees.

On 14 September 2010, the State of North Carolina (State) filed answer and requested that all of plaintiff's claims for relief be denied. On 2 December 2010, the State filed a motion to dismiss or alternatively for summary judgment. On 20 May 2011, plaintiff filed a motion for summary judgment. On 5 July 2011, the State filed an amended motion to dismiss / summary judgment.

On 24 October 2011, the trial court filed a memorandum of decision and judgment. The trial court held that there were no material issues of fact, denied the State's motions to dismiss and for summary judgment, and granted plaintiff's motion for summary judgment, declaring that the Act was unconstitutional. The judgment further provided that the trial court retained jurisdiction to rule on plaintiff's claims for damages and attorney fees.

The State appeals. On 27 January 2012, plaintiff filed a motion to dismiss the State's appeal as being interlocutory.

## II.  Interlocutory Appeal

[1] Plaintiff contends that the State's appeal is interlocutory and should be dismissed. We disagree.

> A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court. An interlocutory

---

1. The complaint failed to disclose that plaintiff was also convicted of felonious receipt of stolen property in 1978.

order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.

*Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950) (internal citations omitted). Since the trial court has not ruled upon plaintiff's claims for compensatory damages and attorney fees, its memorandum of decision and judgment is not a final order and is interlocutory.

Ordinarily, "interlocutory orders are not immediately appealable." *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009). However, an interlocutory order "which affects a substantial right" is appealable. N.C. Gen. Stat. § 1-277 (2011). "The inquiry as to whether a substantial right is affected is two-part—the right itself must be substantial and the deprivation of that substantial right must potentially work injury to [a party] if not corrected before appeal from final judgment[.]" *Jenkins ex rel. Hajeh v. Hearn Vascular Surgery, P.A.*, ___ N.C. App. ___, ___, 719 S.E.2d 151, 156 (2011) (alterations in original) (internal quotation marks omitted).

> Admittedly the "substantial right" test for appealability of interlocutory orders is more easily stated than applied. It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered.

*Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978).

In the instant case, the trial court declared that the Act was unconstitutional, in effect enjoined the State from prosecuting plaintiff for violations of the Act, and denied the State's motion to stay its order pending appeal.

A declaration by a trial court that a criminal statute of this State is unconstitutional is an extraordinary ruling.

> The broad aim of the criminal law is, of course, to prevent harm to society—more specifically, to prevent injury to the health, safety, morals and welfare of the public. This it accomplishes by punishing those who have done harm, and by threatening with punishment those who would do harm, to others.

Wayne R. LaFave and Austin W. Scott, Jr., *Handbook on Criminal Law*, (West Publishing, St. Paul, Minn., 1972) § 2, p. 9.

We hold that the State has a substantial right to enforce the criminal laws of North Carolina and that this right is affected by a ruling declaring a statute, duly enacted by the General Assembly, to be unconstitutional. The State has also demonstrated that the deprivation of that substantial right will potentially work injury if not addressed before appeal from a final judgment. The trial court's judgment prohibits the State from prosecuting plaintiff for possession of a firearm. Further, it casts doubt upon every prosecution by the State throughout North Carolina under Article 54A of Chapter 14 of the General Statutes.

The trial court's memorandum of decision and judgment of 24 October 2011 is an appealable interlocutory order. Plaintiff's motion to dismiss the State's appeal is denied.

### III. Subject Matter Jurisdiction

**[2]** The State contends that the trial court lacked subject matter jurisdiction to hear this case. We disagree.

The State's contention is that plaintiff's complaint is beyond the scope of actions authorized as declaratory judgments pursuant to Article 26 of Chapter 1 of the North Carolina General Statutes. However, this is not the first case in which a convicted felon has sought a declaration from the courts that he has a right to possess firearms. In the cases of *Britt v. State*, 363 N.C. 546, 681 S.E.2d 320 (2009), and *Baysden v. State*, ___ N.C. App. ___, ___, 718 S.E.2d 699 (2011), the civil complaints filed by the plaintiffs sought declaratory relief and injunctive relief, just as the complaint in the instant case. Both of these cases proceeded in the identical posture as the instant case.

This argument is without merit.

### IV. North Carolina Felony Firearms Act

In 1971, the General Assembly enacted the Felony Firearms Act, N.C. Gen. Stat. § 14-415.1, which made unlawful the possession of a firearm by any person previously convicted of a crime punishable by imprisonment of more than two years. N.C. Gen. Stat. § 14-415.2 set forth an exemption for felons whose civil rights had been restored. 1971 N.C. Sess. Laws ch. 954, § 2.

JOHNSTON v. STATE OF N.C.

[224 N.C. App. 282 (2012)]

> In 1975, the General Assembly repealed N.C. Gen.
> Stat. § 14-415.2 and amended N.C. Gen. Stat. § 14-415.1
> to ban the possession of firearms by persons convicted
> of *certain* crimes for five years after the date of "such
> conviction, or unconditional discharge from a correc-
> tional institution, or termination of a suspended sen-
> tence, probation, or parole upon such convictions,
> whichever is later." 1975 N.C. Sess. Laws ch. 870, § 1.

*State v. Johnson,* 169 N.C. App. 301, 303, 610 S.E.2d 739, 741 (2005).
In 1975, the General Assembly amended the Act to allow an exception
for felons to possess firearms "within his own home or on his lawful
place of business." 1975 N.C. Sess. Laws ch. 870, § 2. "In 1995, the
General Assembly amended N.C. Gen. Stat. § 14-415.1 to prohibit pos-
session of certain firearms by all persons convicted of any felony."
*Johnson,* 169 N.C. App. at 303, 610 S.E.2d at 741. "The 1995 amend-
ment did not change the previous provision in N.C.G.S. § 14-415.1
stating that 'nothing [therein] would prohibit the right of any person
to have possession of a firearm within his own house or on his lawful
place of business.' " *Britt,* 363 N.C. at 548, 681 S.E.2d at 321 (alter-
ation in original).

In 2004, the General Assembly amended the Act "to extend the
prohibition on possession to *all* firearms by any person convicted of
any felony, even within the convicted felon's own home and place
of business." *Britt,* 363 N.C. at 548, 681 S.E.2d at 321. In 2006, the
General Assembly amended the Act to exclude antique firearms. 2006
N.C. Sess. Laws ch. 259 § 7(b). Our Supreme Court held the 2004 ver-
sion unconstitutional as applied to Mr. Britt, under the North Carolina
Constitution. *Britt,* 363 N.C. at 550, 681 S.E.2d at 323.

In 2010, the General Assembly amended the Act to provide that a
person convicted of a single nonviolent felony and who has had his or
her citizenship rights restored may petition the district court to
restore his or her firearms rights. 2010 N.C. Sess. Laws, ch. 108, § 1.
This amendment requires that the petitioner have had his or her
citizenship rights restored for at least 20 years in order to file a peti-
tion. *Id.* This amendment became effective on 1 February 2011. 2010
N.C. Sess. Laws ch. 108 § 7.

In 2011, the General Assembly amended N.C. Gen. Stat. § 14-415.1
to exclude persons who, pursuant to the law of the jurisdiction in
which the conviction occurred, have been pardoned or had his or her
firearm rights restored, if such restoration could be granted under

North Carolina law. 2011 N.C. Sess. Laws ch. 268 § 13. This amendment became effective on 1 December 2011. 2011 N.C. Sess. Laws ch. 268 § 26.

## V. Scope of Analysis and Standard of Review

The trial court concluded that the Act, as applied to plaintiff, violated substantive due process rights guaranteed by the United States Constitution and the North Carolina Constitution. The trial court also concluded that the Act, on its face, violated procedural due process rights guaranteed by both Constitutions.

"Conclusions of law are reviewed de novo and are subject to full review." *State v. Biber*, ___ N.C. ___, ___, 712 S.E.2d 874, 878 (2011).

First, we address plaintiff's substantive due process challenge to the Act. Second, we analyze plaintiff's procedural due process challenge. *See, e.g., State v. Bryant*, 359 N.C. 554, 564, 614 S.E.2d 479, 485 (2005) ("In the event that the legislation in question meets the requirements of substantive due process, procedural due process 'ensures that when government action deprive[s] a person of life, liberty, or property . . . that action is implemented in a fair manner.' ").

We analyze plaintiff's arguments regarding substantive due process under the United States Constitution, substantive due process under the North Carolina Constitution, procedural due process under the United States Constitution, and procedural due process under the North Carolina Constitution, in that order.

In analyzing federal constitutional questions, we look to decisions of the United States Supreme Court. We also look for guidance to the decisions of the North Carolina Supreme Court construing federal constitutional and State constitutional provisions, and we are bound by those interpretations. *State v. Elliott*, 360 N.C. 400, 421, 628 S.E.2d 735, 749, (2006) ("The Supreme Court of the United States is the final authority on federal constitutional questions.") We are also bound by prior decisions of this Court construing those provisions, which are not inconsistent with the holdings of the United States Supreme Court and the North Carolina Supreme Court. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989).

## VI. Substantive Due Process Under the Constitution of the United States

[3] "Substantive due process protection prevents the government from engaging in conduct that . . . interferes with rights implicit in the

**JOHNSTON v. STATE OF N.C.**

[224 N.C. App. 282 (2012)]

concept of ordered liberty." *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998) (internal quotation marks omitted).

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In a plurality, the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *District of Columbia v. Heller*, 554 U.S. 570, 171 L. Ed. 2d 637 (2008), and applies equally to the federal government and the States. *McDonald v. Chicago*, ___ U.S. ___, ___, 177 L. Ed. 2d 894, 929 (2010).

The Supreme Court in *Heller* recognized the "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635, 171 L. Ed. 2d at 683. The Court noted that a prohibition on the possession of firearms by a felon is a presumptively lawful regulatory measure. *Heller*, 554 U.S. at 626-27, 171 L. Ed. 2d at 678 n.26. "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Heller*, 554 U.S. at 626-27, 171 L. Ed. 2d at 678.

"We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons[.]" *McDonald*, ___ U.S. at ___, 177 L. Ed. 2d at 926 (internal quotation marks omitted). "We repeat those assurances here. Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms." *Id.*

## A. U.S. v. Chester

The Fourth Circuit Court of Appeals analyzed the Second Amendment rights of a defendant who was convicted of a domestic violence misdemeanor in *U.S. v. Chester*, 628 F.3d 673, 674 (4th Cir. 2010). In that case, the defendant was convicted of illegal possession of a firearm under 18 U.S.C. § 922(g)(9). *Chester*, 628 F.3d at 674. 18 U.S.C. § 922(g)(9) is a federal statute that, at the time *Chester* was decided, prohibited any person who has been convicted "in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(9). The sole issue on appeal was whether the statute infringed the defendant's right to bear arms in light of *Heller*. *Chester*, 628 F.3d at 674.

In *Chester*, the Court observed that the Supreme Court "clearly staked out the core of the Second Amendment. Indeed, *Heller* explained that 'whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.' " *Chester*, 628 F.3d at 676 (quoting *Heller*, 554 U.S. at 635, 171 L. Ed. 2d at 683) (alteration in original).

The Court analyzed language in *Heller* describing "longstanding prohibitions on the possession of firearms by felons" as "presumptively lawful regulatory measures[.]" *Chester*, 628 F.3d at 676. The Court concluded that it is unclear whether *Heller* suggested that longstanding prohibitions such as the prohibition of possession of a firearm by a felon "were historically understood to be valid limitations on the right to bear arms or did not violate the Second Amendment for some other reason." *Chester*, 628 F.3d at 679.[2]

Given this ambiguity, the Fourth Circuit Court of Appeals applied a two-part test to evaluate the right of a domestic violence misdemeanant to bear arms. *Chester*, 628 F.3d at 680 ("Thus, a two-part approach to Second Amendment claims seems appropriate under *Heller*, as explained by the Third Circuit Court of Appeals, *see Marzzarella*, 614 F.3d at 89, and Judge Sykes in the now-vacated *Skoien* panel opinion, *see* 587 F.3d at 808-09.").

"The first question is whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Chester*, 628 F.3d at 680 (internal quotation marks omitted). "This historical inquiry seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification. If it was not, then the challenged law is valid." *Id*. If the regulation burdens conduct that was within the Second Amendment's scope at the time the Second Amendment was ratified, "then we move to the second step of applying an appropriate form of means-end scrutiny." *Id*.

---

2. The Fourth Circuit Court of Appeals noted that other courts have found *Heller*'s list of presumptively lawful firearm regulations "susceptible to two meanings." *Chester*, 628 F.3d at 679 n.5. For example, in *U.S. v. Marzzarella*, 614 F.3d 85, 91 (3rd Cir. 2010), *cert. denied*, ___ U.S. ___, 178 L. Ed. 2d 790 (2011), the Third Circuit Court of Appeals speculated that *Heller* "may suggest the restrictions are presumptively lawful because they pass muster under any standard of scrutiny." *Marzzarella*, 614 F.3d at 91. Alternatively, *Heller* may suggest that the restrictions are presumptively lawful "because they regulate conduct outside the scope of the Second Amendment." *Id*.

JOHNSTON v. STATE OF N.C.

[224 N.C. App. 282 (2012)]

### i. Whether Conduct Is Within Scope of Second Amendment

To determine whether a domestic violence misdemeanant had a right to bear arms under the Second Amendment, the Fourth Circuit Court of Appeals considered historical data on the right of felons to possess firearms. *Id.* The Court concluded that "it appears to us that the historical data is not conclusive on the question of whether the founding era understanding was that the Second Amendment did not apply to felons." *Id.*

Commentators are "divided on the question of the categorical exclusion of felons from Second Amendment protection." *Chester,* 628 F.3d at 681. *See also State v. Whitaker,* 201 N.C. App. 190, 200, 689 S.E.2d 395, 401 (2009) ("[W]e *still* cannot read *Heller* as extending an unqualified right to keep and bear arms to convicted felons.") On subsequent occasions, the Fourth Circuit Court of Appeals deferred reaching a conclusion as to the Second Amendment's scope.[3]

The Fourth Circuit Court of Appeals analyzed the Second Amendment's scope in *U.S. v. Moore,* 666 F.3d 313 (4th Cir. 2012). The defendant was convicted of possession of a firearm under 18 U.S.C. § 922(g)(1). *Moore,* 666 F.3d at 315. 18 U.S.C. § 922(g)(1) is a federal statute that, at the time *Moore* was decided, prohibited any person who has been convicted of a crime "punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). The defendant challenged the statute as applied to him. *Moore,* 666 F.3d at 319.

The Court noted that *Heller* left open the issue of an as-applied challenge. *Moore,* 666 F.3d at 319. The Court concluded that the defendant's assault and robbery convictions put the defendant's right to possess firearms outside the Second Amendment's scope. *Moore,* 666 F.3d at 320. "However the Supreme Court may come to define a 'law-abiding responsible citizen' for Second Amendment purposes,

---

3. *U.S. v. Masciandaro,* 638 F.3d 458 (4th Cir. 2011), *cert. denied,* ___ U.S. ___, 181 L. Ed. 2d 482 (2011) (deferred the question); *U.S. v. Staten,* 666 F.3d 154 (4th Cir. 2011), *cert. denied,* ___ U.S. ___, 182 L. Ed. 2d 794 (2012) (assuming, without deciding, for the sake of analysis that the defendant had rights under the Second Amendment); *U.S. v. Chapman,* 666 F.3d 220 (4th Cir. 2012) (holding that a statute prohibiting possession of firearms while subject to a domestic violence protective order survived intermediate scrutiny); *U.S. v. Carter,* 669 F.3d 411 (4th Cir. 2012) (assuming, without deciding, that the defendant had Second Amendment rights).

[the defendant] surely would not fall within that group." *Moore*, 666 F.3d at 319.[4]

In the instant case, the trial court cited no historical evidence in its analysis of whether a convicted felon's right to bear arms was within the scope of the Second Amendment. Instead, the trial court cited decisions of the Third Circuit Court of Appeals and the Seventh Circuit Court of Appeals and concluded that a convicted felon "still has a fundamental right" to keep and bear arms.

In *U.S. v. Barton*, 633 F.3d 168 (3rd Cir. 2011), the defendant was convicted of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). "[F]elons are categorically different from the individuals who have a fundamental right to bear arms." *Barton*, 633 F.3d at 175. The Third Circuit Court of Appeals held that *Heller* and *McDonald* compelled a conclusion that 18 U.S.C. § 922(g)(1) was facially constitutional. *Id.* The Court further held that the regulation was constitutional as applied to the defendant because he failed to present facts distinguishing his circumstances from other felons who are categorically unprotected by the Second Amendment. *Id.*

In *U.S. v. Williams*, 616 F.3d 685 (7th Cir. 2010), *cert. denied*, ___ U.S. ___, 178 L. Ed. 2d 532 (2010), the defendant was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The Court applied intermediate scrutiny and concluded that the government's objective to keep firearms from violent felons is important. *Williams*, 616 F.3d at 692-93. The Court concluded that the regulation was substantially related to the objective. *Williams*, 616 F.3d at 693.

*Barton* and *Williams* both found that the regulation of possession of firearms by a felon was constitutional. These cases do not

---

4. Other circuits have handled the issue similarly. In *U.S. v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), *cert. denied*, ___ U.S. ___, 178 L. Ed. 2d 193 (2010), the Ninth Circuit Court of Appeals analyzed an as-applied challenge to 18 U.S.C. § 922(g)(1) and concluded that, although "the historical question has not been definitively resolved[,]" the statute did not violate the Second Amendment as applied to the defendant. *Vongxay*, 594 F.3d at 1118.

In *U.S. v. Greeno*, 679 F.3d 510 (6th Cir. 2012), *cert. denied*, ___ U.S. ___, 184 L. Ed. 2d 222, 2012 WL 3280559 (Oct. 1 2012), the Sixth Circuit Court of Appeals analyzed the Second Amendment's scope in a challenge to a federal sentencing guideline that provided that a two-level enhancement may be added if a defendant convicted of a drug offense possessed a dangerous weapon. *Greeno*, 679 F.3d at 513. The Court held that the enhancement, "like other historical restrictions on the possession and use of weapons, punishes an individual who possesses a dangerous weapon for an unlawful purpose and, thus, it falls outside the scope of the Second Amendment right." *Greeno*, 679 F.3d at 520.

support the trial court's conclusion that convicted felons enjoy a fundamental right to bear arms.

In *Chester*, the Fourth Circuit Court of Appeals concluded that, due to "the lack of historical evidence in the record[,]" it could not say that the Second Amendment did not apply to persons convicted of domestic violence misdemeanors. *Chester*, 628 F.3d at 681. The Court assumed that the defendant's Second Amendment rights were intact and proceeded to the next step of its analysis.

In determining whether plaintiff's conduct in the instant case falls within the scope of the Second Amendment, we elect to follow the persuasive authority of *Chester, Carter, Staten,* and *Chapman.* The State does not argue that plaintiff is wholly unprotected by the Second Amendment, and the record before us does not contain historical evidence to reveal whether the Second Amendment protects a felon's right to bear arms. We cannot conclude that the Second Amendment did not apply to convicted felons.

Assuming *arguendo*, without deciding, that the Second Amendment protects plaintiff's right to bear arms, we proceed to the next step of the analysis.

## ii. Level of Scrutiny

The United States Supreme Court declined to establish a specific level of scrutiny for regulations that restrict Second Amendment rights. *See Heller*, 554 U.S. at 635, 171 L. Ed. 2d at ___. The Court indicated that rational basis review was not the appropriate level of scrutiny. *Heller*, 554 U.S. at 628, 171 L. Ed. 2d at 679 n.27.

The Fourth Circuit Court of Appeals looked to the First Amendment as a guide for the appropriate standard of review. *Chester*, 628 F.3d at 682. "In the analogous First Amendment context, the level of scrutiny we apply depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." *Id.* The Court observed that the Second Amendment does not lend itself to a "one-size-fits-all standard of review" any more than any other constitutional right. *Id.* "Gun-control regulations impose varying degrees of burden on Second Amendment rights, and individual assertions of the right will come in many forms." *Id.* (quoting *U.S. v. Skoien*, 587 F.3d 803, 813-14 (7th Cir. 2009), *vacated by U.S. v. Skoien*, 614 F.3d 638 (7th Cir. 2010)).

> Although Chester asserts his right to possess a firearm
> in his home for the purpose of self-defense, we believe

his claim is not within the core right identified in *Heller*—the right of a *law-abiding, responsible* citizen to possess and carry a weapon for self-defense—by virtue of Chester's criminal history as a domestic violence misdemeanant. Accordingly, we conclude that intermediate scrutiny is more appropriate than strict scrutiny for Chester and similarly situated persons.

*Chester*, 628 F.3d at 682-83 (internal citation omitted). The Fourth Circuit Court of Appeals has consistently applied intermediate scrutiny. *See, e.g., U.S. v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011), *cert. denied,* ___ U.S. ___, 181 L. Ed. 2d 482 (2011); *U.S. v. Staten*, 666 F.3d 154, 160-61 (4th Cir. 2011), *cert. denied,* ___ U.S. ___, 182 L. Ed. 2d 7 94 (2012); *U.S. v. Chapman*, 666 F.3d 220, 225 (4th Cir. 2011); *U.S. v. Carter*, 669 F.3d 411, 417 (4th Cir. 2012).

In the instant case, plaintiff's claim is not within the core right described in *Heller*. By virtue of plaintiff's criminal history, his claim is not within the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense.

"Accordingly, the government must demonstrate under the intermediate scrutiny standard that there is a reasonable fit between the challenged regulation and a substantial government objective." *Chester*, 628 F.3d at 683 (internal quotation marks omitted). "Although [the various forms of intermediate scrutiny] differ in precise terminology, they essentially share the same substantive requirements." *Id.* (quoting *U.S. v. Marzzarella*, 614 F.3d 85, 98 (3rd Cir. 2010), *cert. denied,* ___ U.S. ___, 178 L. Ed. 2d 790 (2011)) (alterations in original). "They all require the asserted governmental end to be more than just legitimate, either 'significant,' 'substantial,' or 'important' . . . [and] require the fit between the challenged regulation and the asserted objective be reasonable, not perfect." *Id.* (alterations in original).

## B. Application of Intermediate Scrutiny

In the instant case, the trial court concluded that the State "failed to meet its burden of showing that the Felony Firearms Act is constitutional as applied to Plaintiff under any standard of scrutiny." The trial court concluded that the State has not shown a substantial relationship between the means and "the government's admittedly significant interest[.]" We apply an intermediate level of scrutiny to the Act to determine whether it violates plaintiff's substantive due process rights under the United States Constitution.

First, the State must demonstrate a substantial government objective. The State argues that the purpose of the Act is to ensure public safety and "to protect the public by preventing future violence by individuals who have already shown disdain for the law."

Public safety is an important government objective. "In this case, the government's stated objective is to keep firearms out of the hands of violent felons, who the government believes are often those most likely to misuse firearms. We cannot say that this objective is not an important one." *Williams*, 616 F.3d at 692-93 (internal citations omitted). *See also U.S. v. Skoien*, 614 F.3d 638, 642 (4th Cir. 2010), *cert. denied*, ___ U.S. ___, 179 L. Ed. 2d 645 (2010) ("[N]o one doubts that the goal of § 922(g)(9), preventing armed mayhem, is an important governmental objective.").

Second, the State must demonstrate a reasonable fit between the Act and the objective of ensuring the public safety. The State argues that our Supreme Court upheld the Act against an *ex post facto* challenge in *State v. Whitaker*, 364 N.C. 404, 409, 700 S.E.2d 215, 218 (2010). However, *Whitaker* does not control the issue of whether the Act violates plaintiff's substantive due process rights under the United States Constitution.

In *Chester*, the Fourth Circuit Court of Appeals remanded to give the government an opportunity to show "a substantial relationship" between the statute and the objective. *Chester*, 628 F.3d at 683.

> [The government] has not attempted to offer sufficient *evidence* to establish a substantial relationship between § 922(g)(9) and an important governmental goal. Having established the appropriate standard of review, we think it best to remand this case to afford the government an opportunity to shoulder its burden and Chester an opportunity to respond. Both sides should have an opportunity to present their evidence and their arguments to the district court in the first instance.

*Chester*, 628 F.3d at 683.

We cannot conclude on this record that the State carried the burden of establishing a reasonable fit and a substantial relationship between the important goal of ensuring public safety and the Act. Having established that intermediate scrutiny is the appropriate level of scrutiny, we remand this issue to the trial court to give the State an opportunity to present evidence and argument that it can meet this burden and plaintiff an opportunity to respond.

## VII.  Substantive Due Process Under the Constitution of the State of North Carolina

**[4]**  "Substantive due process is a guaranty against arbitrary legislation, demanding that the law shall not be unreasonable, arbitrary or capricious, and that the law be substantially related to the valid object sought to be obtained." *Huntington Props., LLC v. Currituck Cty.*, 153 N.C. App. 218, 229, 569 S.E.2d 695, 703 (2002).

"No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. Our Law of the Land Clause was "copied in substance from Magna Charta by the framers of the [North Carolina] Constitution of 1776" and is synonymous with "due process of law, a phrase appearing in the Federal Constitution and the organic law of many states." *State v. Ballance*, 229 N.C. 764, 768-69, 51 S.E.2d 731, 734 (1949) (internal quotation marks omitted). *See also Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004).

> A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed; and, as standing armies in time of peace are dangerous to liberty, they shall not be maintained, and the military shall be kept under strict subordination to, and governed by, the civil power. Nothing herein shall justify the practice of carrying concealed weapons, or prevent the General Assembly from enacting penal statutes against that practice.

N.C. Const. art. 1, § 30.

### A.  Level of Scrutiny

Our Supreme Court examined an argument that the 2004 version of the Act violated substantive due process rights, as applied to the plaintiff, under the North Carolina Constitution in *Britt*, 363 N.C. 546, 681 S.E.2d 320.

In that case, our Supreme Court held that "regulation of the right to bear arms is a proper exercise of the General Assembly's police power, but that any regulation must be at least 'reasonable and not prohibitive, and must bear a fair relation to the preservation of the public peace and safety.'" *Britt*, 363 N.C. at 549, 681 S.E.2d at 322 (quoting *State v. Dawson*, 272 N.C. 535, 547, 159 S.E.2d 1, 10 (1968)).

The question was whether, as applied to the plaintiff, the Act was "a reasonable regulation." *Britt*, 363 N.C. at 549, 681 S.E.2d at 322.[5]

Our Supreme Court has held that "the only significant issue for this Court when interpreting a provision of our state Constitution paralleling a provision of the United States Constitution will always be whether the state Constitution guarantees additional rights to the citizen above and beyond those guaranteed by the parallel federal provision." *Virmani v. Presbyterian Health Services Corp.*, 350 N.C. 449, 475, 515 S.E.2d 675, 692 (1999) (quoting *State v. Jackson*, 348 N.C. 644, 648, 503 S.E.2d 101, 103 (1998)).

The North Carolina Constitution may guarantee a broader right to individuals to keep and bear arms than the United States Constitution. *Whitaker*, 201 N.C. App. at 202, 689 S.E.2d at 402 n.4; *State v. Fennell*, 95 N.C. App. 140, 143, 382 S.E.2d 231, 233 (1989). If rational basis review results in less protection of the right to bear arms under the North Carolina Constitution than the United States Constitution, "use of the rational basis standard may not be appropriate[.]"[6] *Whitaker*, 201 N.C. App. at 202, 689 S.E.2d at 402 n.4. However, we are "bound by precedent to use rational relation as the level of constitutional scrutiny[.]" *Id.*

To determine whether the Act was reasonable, our Supreme Court considered (1) the factors surrounding the plaintiff and (2) the nature of the Act.

First, regarding the factors surrounding the plaintiff, the Court noted that the plaintiff's felony conviction was for possession with intent to sell and deliver a controlled substance in 1979. *Britt*, 363 N.C. at 549, 681 S.E.2d at 322. Our Supreme Court considered the fact that the plaintiff's crime did not involve violence or the threat of violence; the length of time since the conviction in 1979; the lack of evidence that the plaintiff was dangerous or ever misused firearms, before his crimes or after the restoration of his rights; and the fact that the plaintiff willingly gave up his weapons after learning of the Act. *Britt*, 363 N.C. at 549-50, 681 S.E.2d at 322-23. Consideration of

---

5. The Supreme Court noted that, because of its holding, the Court "need not address plaintiff's argument that the right to keep and bear arms is a fundamental right entitled to a higher level of scrutiny." *Britt*, 363 N.C. at 549, 681 S.E.2d at 322 n.2.

6. The State Constitutions may not provide less protection than the federal Constitution. Typically, rational basis review provides less protection than intermediate scrutiny. Currently, the Fourth Circuit Court of Appeals applies intermediate scrutiny. *Chester*, 628 F.3d at 683. The North Carolina Supreme Court has applied rational basis to challenges to the Act under the North Carolina Constitution.

these factors led to the conclusion that the plaintiff "is not among the class of citizens who pose a threat to public peace and safety." *Britt*, 363 N.C. at 550, 681 S.E.2d at 323.

Second, our Supreme Court considered the nature of the 2004 amendment to the Act. The version at issue in *Britt* did not allow restoration of firearm rights. *Id.*

Based on the factors surrounding the plaintiff and the 2004 version of the Act, our Supreme Court concluded that the Act was unconstitutional under the North Carolina Constitution. *Id.*

> Based on the facts of plaintiff's crime, his long post-conviction history of respect for the law, the absence of any evidence of violence by plaintiff, and the lack of any exception or possible relief from the statute's operation, as applied to plaintiff, the 2004 version of N.C.G.S. § 14-451.1[7] [sic] is an unreasonable regulation, not fairly related to the preservation of public peace and safety.

*Id.*

### B.  Application in Subsequent Cases

#### i.  *State v. Whitaker*

In *Whitaker*, the defendant was convicted of eleven counts of possession of a firearm by a felon. *Whitaker*, 201 N.C. App. at 191, 689 S.E.2d at 395. The defendant argued that the Act was unconstitutional under the federal and State Constitutions. *Id.*

This Court interpreted *Britt* as focusing on five factors to determine if the Act was unconstitutional as applied to the plaintiff. *Whitaker*, 201 N.C. App. at 205, 689 S.E.2d at 404. These factors included:

> (1) the type of felony convictions, particularly whether they involved violence or the threat of violence[,] (2) the remoteness in time of the felony convictions; (3) the felon's history of lawabiding [sic] conduct since [the] crime, (4) the felon's history of responsible, lawful firearm possession during a time period when possession of firearms was not prohibited, and (5) the felon's assiduous and proactive compliance with the 2004 amendment.

---

7. N.C. Gen. Stat. § 14-451.1 is not a statute. Context indicates that our Supreme Court intended to hold N.C. Gen. Stat. § 14-415.1 unconstitutional as applied to the plaintiff. This appears to be the only place in the opinion that the Act is cited incorrectly.

*Whitaker*, 201 N.C. App. at 205, 689 S.E.2d at 404 (alterations in original) (internal quotation marks omitted).

Analyzing these factors required finding facts. "Normally, the trial court finds facts, and the appellate courts do not engage in fact finding." *Id.* The Court observed that the trial court's order did not find most of the facts regarding these factors, "and thus the Supreme Court apparently based its factual findings as to Mr. Britt upon the uncontroverted evidence presented before the trial court." *Whitaker*, 201 N.C. App. at 205, 689 S.E.2d at 404.

The defendant in *Whitaker* was convicted in 1988 of selling and delivering cocaine, indecent liberties with a minor in 1989, and possessing cocaine in 2005. *Whitaker*, 201 N.C. App. at 206, 689 S.E.2d at 404. The Court found that "there is no indication that these crimes involved violence or the threat of violence[.]" *Id.* (internal quotation marks omitted). "Mr. Britt's felony convictions were more remote in time" than the defendant's most recent felony conviction. *Id.*

The Court found that the "defendant has demonstrated a blatant disregard for the law as he has been convicted of numerous misdemeanors[.]" *Id.* The Court found that there was no evidence that the defendant was dangerous or had ever misused firearms. However, the defendant acquired the guns that led to his criminal charge after N.C. Gen. Stat. § 14-415.1 prohibited him from possessing them. *Whitaker*, 201 N.C. App. at 206, 689 S.E.2d at 405. The Court held that "we cannot conclude that N.C. Gen. Stat. § 14-415.1 is unconstitutional as applied to defendant." *Id.*[8]

### ii.  State v. Buddington

In *State v. Buddington*, ___ N.C. App. ___, 707 S.E.2d 655 (2011), the defendant was indicted for possessing a firearm as a felon. The defendant argued that the Act was unconstitutional as applied to him. *Buddington*, ___ N.C. App. at ___, 707 S.E.2d at 656.

The defendant filed an unverified motion to dismiss based on constitutional grounds but failed to present any evidence in support of his motion. "In order for defendant to prevail in a motion to dis-

---

8. The Court also rejected arguments that the Act violated the prohibition against *ex post facto* laws and that the Act was an unconstitutional bill of attainder. *Whitaker*, 201 N.C. App. at 207, 689 S.E.2d at 405. The dissent disagreed with holdings regarding *ex post facto* and bill of attainder. *Whitaker*, 201 N.C. App. at 210-12, 689 S.E.2d at 408. Our Supreme Court affirmed the majority. *State v. Whitaker*, 364 N.C. 404, 412, 700 S.E.2d 215, 220 (2010)..

miss through an as-applied constitutional challenge to N.C. Gen. Stat. § 14-415.1, he must present evidence which would allow the trial court to make findings of fact regarding [the five factors enumerated in *Whitaker*]". *Buddington*, ___ N.C. App. at ___, 707 S.E.2d at 657.

### iii.  *Baysden v. State*

In *Baysden*, this Court considered an as-applied challenge to the Act. The Court applied the "reasonable regulation" test enunciated in *Britt, supra. Baysden*, ___ N.C. App. at ___, 718 S.E.2d at 703. This Court held that "we clearly have a sufficient evidentiary record upon which to evaluate the validity of Plaintiff's claim[.]" *Id.* The Court observed that none of the five factors of the analysis in *Britt* is determinative. *Id.*

The Court found that the plaintiff was in "essentially the same position as Mr. Britt." *Baysden*, ___ N.C. App. at ___, 718 S.E.2d at 704. The plaintiff was convicted of two felonies, "neither of which involved any sort of violent conduct, between three and four decades ago." *Id.* The Court found that the plaintiff had been a law-abiding citizen since then. *Id.* The Court found that the plaintiff used weapons in a safe and lawful manner until the 2004 amendments and has "assiduously and proactively" complied with the Act. *Id.*

The Court noted that the fact that the General Assembly amended the Act to allow for restoration of the right to possess firearms "is not particularly relevant to the required constitutional analysis." *Baysden*, ___ N.C. App. at ___, 718 S.E.2d at 704. The Court acknowledged that our Supreme Court mentioned the lack of relief, but theorized that the Supreme Court intended to justify its analysis of the challenge as applied to the plaintiff. *Id.* The Court rejected the proposition that our Supreme Court intended to signal that a restoration provision would insulate the Act from "as-applied" challenges. *Id.*

This Court also rejected the proposition that the Act's definitions control whether the plaintiff's prior convictions constituted violent felonies for constitutional analysis under *Britt* and *Whitaker*. *Baysden*, ___ N.C. App. at ___, 718 S.E.2d at 705. Instead, the Court concluded that the "Supreme Court's references to Mr. Britt's 'uncontested lifelong non-violence towards other citizens,' *Britt*, 363 N.C. at 550, 681 S.E.2d at 323 . . . require us to focus on the litigant's actual conduct rather than upon the manner in which the General Assembly has categorized or defined certain offenses." *Baysden*, ___ N.C. App. at ___, 718 S.E.2d at 705. "In light of the undisputed evidence that the sawed-off shotgun that Plaintiff possessed in 1972 was inopera-

ble . . . we are unable to conclude that Plaintiff's prior convictions include 'violent' crimes[.]" *Id.*

After weighing the other factors enumerated in *Britt*, the Court sustained the plaintiff's challenge. *Baysden*, ___ N.C. App. at ___, 718 S.E.2d at 705-06.[9]

### C. Application to the Instant Case

The trial court concluded that the State "failed to meet its burden of showing that the Felony Firearms Act is constitutional as applied to Plaintiff under any standard of scrutiny." We apply the "reasonable regulation" analysis to determine whether the Act violates plaintiff's substantive due process rights under the North Carolina Constitution.

We consider the factors surrounding plaintiff to determine whether plaintiff is "among the class of citizens who pose a threat to public peace and safety." *Britt*, 363 N.C. at 550, 681 S.E.2d at 323. These factors include the five factors outlined in *Whitaker*:

> (1) the type of felony convictions, particularly whether they involved violence or the threat of violence[,] (2) the remoteness in time of the felony convictions; (3) the felon's history of lawabiding [sic] conduct since [the] crime, (4) the felon's history of responsible, lawful firearm possession during a time period when possession of firearms was not prohibited, and (5) the felon's assiduous and proactive compliance with the 2004 amendment.

*Whitaker*, 201 N.C. App. at 205, 689 S.E.2d at 404 (alterations in original) (internal quotation marks omitted).

First, we consider whether the convictions involved violence or the threat of violence. *Whitaker*, 201 N.C. App. at 205, 689 S.E.2d at 404. The trial court found that plaintiff was convicted of felonious receipt of stolen property and conspiracy to commit grand larceny on 27 January 1978. The trial court also found that plaintiff was convicted of "fraudulent setting fire, conspiracy, false statement to procure, and conspiracy to receive, receiving, conspiracy to commit larceny and accessory before the fact in violation of N.C. Gen. Stat. §§ 14-65, 14-214, 14-71, and 14-5" on 11 June 1981.

---

9. The State appealed to our Supreme Court as of right, based on the dissent. Plaintiff's petition for discretionary review of additional issues was granted by our Supreme Court. The appeals were argued on 8 May 2012 and are still pending before our Supreme Court.

Normally, "the appellate courts do not engage in fact finding." *Whitaker*, 201 N.C. App. at 205, 689 S.E.2d at 404. However, we examine the uncontroverted evidence presented to the trial court. *Id.*

The record shows that plaintiff was convicted of conspiracy to commit larceny of a trailer loaded with tobacco and receipt of stolen property in 1978. The record further shows that plaintiff pled no contest to fraudulent setting fire, conspiracy, and false statement to procure in 1981. The record also shows that plaintiff pled guilty to conspiracy to receive, receiving, conspiracy to commit larceny, accessory before the fact of larceny, and receiving in 1981. However, the record shows that the 1981 convictions arose from plaintiff's conduct committed in 1976. A jury found plaintiff guilty of "taking a bear with the use or aid of bait" on 13 November 1996.

The trial court concluded that the crimes of 1978 and 1981 "did not involve either violence or the use of a firearm." This Court has rejected the proposition that the statutory definitions control whether plaintiff's prior convictions constitute "violent" felonies for constitutional analysis. *Baysden*, ___ N.C. App. at ___, 718 S.E.2d at 705.

In the instant case, the trial court made no findings of fact that supported its conclusion that the crimes did not involve either violence or the threat of violence. We cannot ascertain, based upon the record before us, whether plaintiff's convictions involved violence or the threat of violence. We remand for the trial court to take evidence and make findings as to this factor.

The dissent acknowledges that the majority opinion in *Baysden* is controlling, but then engages in statutory analysis of plaintiff's conviction for fraudulently burning a dwelling in order to determine its violence.

This Court rejected the proposition that the Act's definitions control whether the plaintiff's prior convictions constituted violent felonies for constitutional analysis under *Britt* and *Whitaker*. *Baysden*, ___ N.C. App. at ___, 718 S.E.2d at 705. This Court is bound by the prior decisions of another panel addressing the same issue. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989). We are not at liberty to follow the rationale of the dissent in *Baysden*.

Moreover, although statutory analysis is improper under *Baysden*, the dissent does not demonstrate that the offense of fraudulently setting fire is a violent crime. The statute defines burning a

**JOHNSTON v. STATE OF N.C.**

[224 N.C. App. 282 (2012)]

dwelling as "[i]f any person . . . shall wantonly and willfully *or* for a fraudulent purpose set fire[.]" N.C. Gen. Stat. § 14-65 (emphasis added). The dissent assumes that plaintiff was convicted of wantonly and willfully setting fire, but plaintiff was convicted of fraudulently setting fire. The dissent cites no authority for the proposition that fraud constitutes violence or the threat of violence.

Because we cannot determine whether plaintiff's convictions involved violence or the threat of violence and because statutory analysis is not permitted under *Baysden*, we remand for the trial court to take evidence and make findings as to this factor.

Second, we consider the length of time since plaintiff's convictions. *Whitaker*, 201 N.C. App. at 205, 689 S.E.2d at 404. Almost 31 years have passed since plaintiff was last convicted of a felony. Almost 16 years have passed since plaintiff was convicted of a misdemeanor hunting violation. This factor appears to weigh in favor of plaintiff's claim.

Third, we consider "the felon's history of lawabiding [sic] conduct since [the] crime[.]" *Id.* In *Britt*, the plaintiff was convicted of a single count of possession with intent to sell and deliver methaqualone. *Britt*, 363 N.C. at 547, 681 S.E.2d at 321. "In the thirty years since plaintiff's conviction of a nonviolent crime he has not been charged with any other crime nor is there any evidence that he has misused a firearm in any way." *Britt*, 363 N.C. at 548, 681 S.E.2d at 322.

In the instant case, the record shows that plaintiff was convicted of conspiracy to commit larceny of a trailer loaded with tobacco and receipt of stolen property in 1978. The record also shows that plaintiff pled no contest to fraudulent setting fire, conspiracy, and false statement to procure in 1981. The record shows that plaintiff pled guilty to conspiracy to receive, receiving, conspiracy to commit larceny, accessory before the fact of larceny, and receiving in 1981. However, the record shows that these convictions in 1981 arose from plaintiff's actions in 1976. A jury found plaintiff guilty of "taking a bear with the use or aid of bait" on 13 November 1996.

It is difficult to determine, from *Britt* and *Whitaker*, from which conviction this Court is to analyze the felon's subsequent conduct. Since the crimes for which plaintiff was convicted in 1981 were committed in 1976, prior to 1978, we have considered all of these crimes under the first factor of this analysis. Thus, the only conviction for post-1978 conduct is for a hunting violation. We hold that this evi-

dences generally law-abiding conduct since 1978 and is a factor to be weighed in favor of plaintiff.

Fourth, we consider the felon's history of responsible, lawful firearm possession during a time period when possession of firearms was not prohibited. *Whitaker*, 201 N.C. App. at 205, 689 S.E.2d at 404. The record shows plaintiff's affidavits as to his own responsible, lawful firearm possession between 1988 and 2004. During this time period, plaintiff was convicted of a hunting offense. We cannot ascertain from the record before us whether plaintiff used a firearm in a responsible, lawful manner during the events giving rise to this conviction. We remand for the trial court to take additional evidence and make findings as to this factor.

Fifth, we consider the felon's compliance with the 2004 amendment. *Id.* Plaintiff's affidavit shows that he willingly gave up his weapons after learning of the Act. This factor appears to weigh in favor of plaintiff's claim. However, we note that this factor would appear to weigh in the favor of any plaintiff who chooses to challenge the Felony Firearms Act under the Declaratory Judgment Act, as opposed to challenging the Act by appealing a criminal conviction for firearm possession by a felon.

After careful consideration of the five factors outlined in *Whitaker*, we cannot determine from the record before us whether plaintiff is "among the class of citizens who pose a threat to public peace and safety[.]" *Britt*, 363 N.C. at 550, 681 S.E.2d at 323.

We remand to the trial court with instruction to take additional evidence regarding the *Whitaker* factors surrounding plaintiff's felony convictions and post-conviction history. The portion of the trial court's order concluding that the Act, as applied to plaintiff, violates substantive due process rights guaranteed by the North Carolina Constitution is reversed.

### VIII.  Procedural Due Process under the Constitution of the United States

[5] "No person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must

establish that no set of circumstances exists under which the Act would be valid." *U.S. v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707 (1987).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Elridge*, 424 U.S. 319, 332, 47 L. Ed. 2d 18, 31 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333, 47 L. Ed. 2d at 32.

## A. Existence of a Constitutionally Protected Interest

"The requirements of procedural due process apply only to the *deprivation* of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 33 L. Ed. 2d 548, 556 (1972) (emphasis added).

To analyze plaintiff's facial challenge, we first determine whether the State deprived an individual of liberty or property. Plaintiff does not argue, and the trial court did not conclude, that the Act deprives an individual of property. Therefore, we do not analyze the Act to determine whether it deprives an individual of property.

Next, we analyze whether the State deprived an individual of liberty. The United States Supreme Court has previously defined the meaning of "liberty" in the Fourteenth Amendment.

> [L]iberty . . . . denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

*Board of Regents*, 408 U.S. at 572, 33 L. Ed. 2d at 558. The United States Supreme Court held that the Second Amendment right to keep and bear arms is a fundamental right necessary to our system of ordered liberty. *McDonald*, ___ U.S. at ___, 177 L. Ed. 2d at 921.

The right in the instant case is distinguishable from the Second Amendment right in *Heller* and *McDonald*. The right in *Heller* is "the right of a *law-abiding, responsible* citizen to possess and carry a

weapon for self-defense[.]" *Chester*, 628 F.3d at 683. The right in the instant case is the right of a convicted felon to bear arms.

No federal or State case has held that a convicted felon enjoys a liberty interest to bear arms under the Fourteenth Amendment. We hold that the Act does not deprive plaintiffs of liberty without due process of law under the United States Constitution. The portion of the trial court's order concluding that the Act, on its face, violates procedural due process rights guaranteed by the United States Constitution is reversed.

Assuming *arguendo*, without deciding, that the State deprived an individual of a constitutionally protected interest, we proceed to the next step in our analysis.

### B.  Whether Procedures Are Constitutionally Significant

The trial court concluded that "there are presently no procedures attendant upon the deprivation of this fundamental liberty interest that are constitutionally sufficient."

To survive a facial challenge, the procedures of the Act need only be adequate to authorize the deprivation of liberty of at least some persons charged with being a felon in possession of a firearm. *See, e.g., Salerno*, 481 U.S. at 751, 95 L. Ed. 2d at 711; *Schall v. Martin*, 467 U.S. 253, 264, 81 L. Ed. 2d 207, 217 (1984). The United States Supreme Court describes a more thorough review in *Mathews.*

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33.

Our Supreme Court described this analysis as a "three-factor balancing test[.]" *Henry v. Edmisten and Barbee v. Edmisten*, 315 N.C. 474, 480, 340 S.E.2d 720, 725 (1986). "The first factor that must be weighed is the private interest affected by the challenged official action." *Henry*, 315 N.C. at 482, 340 S.E.2d at 726. The private inter-

est that the Act affects is the interest of a convicted felon to possess firearms. As previously discussed, no court has held that a convicted felon has a protected liberty interest to bear arms under the Fourteenth Amendment. Therefore, it is not clear what weight, if any, to assign this private interest.

"The second step in the balancing test requires us to weigh the risk of erroneous deprivation of the private interest as a result of the procedures used and the probable value of additional procedural safeguards." *Henry*, 315 N.C. at 484, 340 S.E.2d at 727. The risk of an erroneous deprivation of this interest is small, but there are no procedures to determine whether the interest should or should not be deprived. Our legislature mandated that any felon found in possession of a firearm is subject to criminal liability. To the extent that plaintiff argues this determination is unconstitutional, that argument is addressed in the Section of this opinion on substantive due process protections.

"The third and final factor that must be weighed is the state's interest served by the summary procedure used, including the state function involved and the fiscal and administrative burdens that would result from additional procedures argued to be necessary." *Henry*, 315 N.C. at 488, 340 S.E.2d at 730. The State's interest is to ensure the public safety. As previously discussed, this constitutes an important government objective.

After balancing these three factors, we conclude that the State's interest in ensuring the public safety outweighs the private interest involved (if any) and any risk of erroneously depriving those interests. The Act does not deprive plaintiffs of liberty without due process of law under the United States Constitution.

## IX. Procedural Due Process under the Constitution of the State of North Carolina

"No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. "The Law of the Land Clause is the parallel provision in the state constitution to the Due Process Clause of the Fourteenth Amendment of the federal constitution." *Henry*, 315 N.C. at 480, 340 S.E.2d at 725.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully[.]" *In re W.B.M.*, ___ N.C. App. ___, ___, 690 S.E.2d 41, 47 (2010).

> The presumption is that any act passed by the legislature is constitutional, and the court will not strike it down if such legislation can be upheld on any reasonable ground. An individual challenging the facial constitutionality of a legislative act must establish that no set of circumstances exists under which the Act would be valid.

*W.B.M.*, ___ N.C. App. at ___, 690 S.E.2d at 47 (internal citations and quotation marks omitted).

Similar to the analysis of procedural due process rights under the United States Constitution, we examine procedural due process questions under the North Carolina Constitution in two steps. "[F]irst, we must determine whether there exists a liberty or property interest which has been interfered with by the State; second, we must determine whether the procedures attendant upon that deprivation were constitutionally sufficient." *W.B.M.*, ___ N.C. App. at ___, 690 S.E.2d at 48 (internal citation omitted).

## A. Existence of a Constitutionally Protected Interest

Plaintiff does not argue, and the trial court did not conclude, that the Act interferes with property or a property interest. We do not analyze the Act to determine whether it interferes with property or a property interest.

Next, we analyze whether the State interfered with liberty or a liberty interest. We have recognized that "liberty," in the context of the Law of the Land Clause, extends beyond freedom from arbitrary physical constraint or servitude. *See Ballance*, 229 N.C. at 769, 51 S.E.2d at 734 ("liberty" includes the right to pursue a vocation); *State v. Stines*, 200 N.C. App. 193, 198, 683 S.E.2d 411, 414 (2009) (satellite-based monitoring enrollment implicates a significant liberty interest); *W.B.M.*, ___ N.C. App. at ___, 690 S.E.2d at 49 ("liberty" to pursue a vocation in childcare is limited by inclusion on a list of those who allegedly abused or neglected children).

The United States Supreme Court held that the Second Amendment right to keep and bear arms is a fundamental right necessary to our system of ordered liberty. *McDonald*, ___ U.S. at ___, 177 L. Ed. 2d at 921. As previously discussed, the right in the instant

**JOHNSTON v. STATE OF N.C.**

[224 N.C. App. 282 (2012)]

case is distinguishable from the Second Amendment right in *Heller* and *McDonald*.

No North Carolina case has held that, under the Law of the Land Clause, a convicted felon enjoys a liberty interest to bear arms. The Act does not deprive plaintiffs of liberty without due process of law under the North Carolina Constitution. The portion of the trial court's order concluding that the Act, on its face, violates procedural due process rights guaranteed by the North Carolina Constitution is reversed.

Assuming *arguendo*, without deciding, that plaintiff has a constitutionally protected interest, we proceed to the second step in the analysis.

### B. Whether Procedures Are Constitutionally Significant

Our Supreme Court altered the *Mathews* balancing test to analyze challenges to State statutes under the North Carolina Constitution's Law of the Land Clause in *Henry, supra*.

> We are not satisfied with using a balancing test as a gauge to determine what procedural steps our state's Law of the Land Clause requires before the state may deprive a person of a protected interest. The balancing test is open to several objections. First, it makes the decision making process unduly responsive to the subjective notions of the decision makers. Each court must make its own assessment of the weight to be afforded the private interest, the state's interest and the value of additional procedures. Second, infusion of this subjectivity into the decision making process necessarily leads to unpredictable and sometimes inconsistent results. In this case, for example, the superior court judge reached a different conclusion about the constitutionality of the revocation statute than did we using the same balancing test.

> The root of the problem with using the balancing test to determine whether the process provided by a statute is that which is constitutionally due is that the test confuses the judicial and legislative functions. The role of the legislature is to balance the weight to be afforded to disparate interests and to forge a workable compromise among those interests. The role of the Court is not to sit as a super legislature and second-guess the balance struck by the elected officials. Rather

than rebalancing, the Court's role is only to measure the balance struck by the legislature against the required minimum standards of the constitution. The best way for the Court to discharge this function is for it to enunciate a workable principle as to what process the law of the land minimally requires.

*Henry,* 315 N.C. at 490-91, 340 S.E.2d at 731.

The Court in *Henry* summarized procedures, as set out in several federal cases, that satisfied the Law of the Land Clause.

In the instant case, the risk of an erroneous deprivation of a constitutionally protected liberty interest is small, but no procedures exist to determine whether the interest should be deprived. The General Assembly mandated that any felon found in possession of a firearm is subject to criminal liability. To the extent that plaintiff argues that this determination is unconstitutional, that argument is addressed in the Section of this opinion analyzing substantive due process protections.

After considering the requirements of the Law of the Land Clause, we hold that the Act does not deprive individuals of a constitutionally protected liberty interest without due process of law under the North Carolina Constitution.

## X. Conclusion

The portion of the trial court's order concluding that the Act, as applied to plaintiff, violates substantive due process rights guaranteed by the United States Constitution is reversed. As to the federal substantive due process issue, we remand to the trial court to give the State an opportunity to present evidence and argument on this question and for plaintiff to respond.

The portion of the trial court's order concluding that the Act, as applied to plaintiff, violates substantive due process rights guaranteed by the North Carolina Constitution is reversed and remanded for the trial court to take evidence and make additional findings.

The portion of the trial court's order concluding that the Act, on its face, violated procedural due process rights guaranteed by the State and federal Constitutions is reversed.

REVERSED AND REMANDED.

**JOHNSTON v. STATE OF N.C.**

[224 N.C. App. 282 (2012)]

Judge CALABRIA concurs.

Judge BEASLEY concurs in part and dissents in part.

BEASLEY, Judge concurring in part and dissenting in part.

I agree with the majority that this appeal, while interlocutory, is properly before us as affecting a substantial right and that the trial court had subject matter jurisdiction to hear this case. I also agree with the majority's reversal of the trial court's ruling on the procedural due process claims. I further agree with the majority that, with regard to the substantive due process claims under the U.S. Constitution, we should remand pursuant to *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010), to determine whether the State has met its burden under intermediate scrutiny.[1] However, because I believe that Plaintiff's substantive due process claims under the North Carolina Constitution fail, I respectfully dissent.

In its analysis of Plaintiff's substantive due process claims under the North Carolina Constitution, the trial court relied upon the factors put forth in *Britt* and reaffirmed in *Baysden v. State*, ___ N.C. App. ___, 718 S.E.2d 699 (2011), to reach its conclusion that the statute is unconstitutional as applied to Plaintiff in this case. *See Britt v. State*, 363 N.C. 546, 550, 681 S.E.2d 320, 323 (2009); *Baysden*, ___ N.C. App. at ___, 718 S.E.2d at 703. I agree with the majority that *Baysden* controls, despite my dissenting opinion therein. However, even if the statute may be unconstitutional as applied to a particular plaintiff, Plaintiff *sub judice* surely should not benefit from such exception, granting him unbridled constitutional protection, for several reasons.[2]

---

1. However, the trial court notes that the State did not respond to the statistics provided by Plaintiff suggesting that the statute has not had an effect on firearms violence. I would first note that the State is not required to provide statistical evidence to establish a reasonable fit. *See Carter*, 669 F.3d at 418. Second, the trial court itself states that "the statistical evidence cited by Plaintiff is not a complete and comprehensive study of recidivism firearm violence[.]" The statistics referenced by the court provide no comparison of figures pre- and post-enactment of this statute or its corresponding amendments. Thus, there is no indication of how many crimes the statute prevents. Further, the trial court makes light of the relatively low number of recidivist felons convicted of violent crimes in the face of the number of convicted felons, but this could equally be evidence of the effectiveness of the statute—in other words, the number is low precisely because convicted felons have been prohibited from possessing firearms. Thus, these statistics are unhelpful and should be accorded no weight.

2. Our court in *Baysden* also determined, without remanding to the trial court for its determination as the majority *sub judice* now holds, that the plaintiff's conviction of possession of a sawed-off shot gun did not constitute a violent felony. ___ N.C. App. at ___, 718 S.E.2d at 705-06.

The factors utilized by our Supreme Court in *Britt* were applicable in determining whether the statute is constitutional as applied to an individual who has not displayed *either* a violent tendency or a repetitive disregard for the laws of this state. *Britt*, 363 N.C. at 550, 681 S.E.2d at 323. In *Baysden*, our Court rejected the premise that "the fact that Plaintiff has two, rather than one, prior felony convictions demonstrates the appropriateness of a finding in the State's favor." *Baysden*, ___ N.C. App. at ___, 718 S.E.2d at 705. Citing *Britt* and *Whitaker*, the Court noted that "the appropriate inquiry requires an analysis of the number, age, and severity of the offenses for which the litigant has been convicted." *Id.* at ___, 718 S.E.2d at 705-06. In *Baysden*, our Court held that in evaluating " 'the facts of [P]laintiff's crime[s], his long post-conviction history of respect for the law, the absence of any evidence of violence by the [P]laintiff, and the lack of any exception or possible relief from the statute's operation,' " the as applied challenge must be upheld. *Id.* at ___, 718 S.E.2d at 706 (alterations in original)(quoting *Britt*, 363 N.C. at 550, 681 S.E.2d at 323).

Plaintiff *sub judice* was convicted of **ten** felonies. In Caswell County, North Carolina, Plaintiff was convicted of the following felonies:

| | |
|---|---|
| 80 CRS 1186 | Fraudulently Set Fire to Dwelling House; |
| 80 CRS 1187 | Conspiracy; |
| 80 CRS 1188 | False Statement to Procure; |
| 81 CRS 322 | Conspiracy to Receive; |
| 81 CRS 323 | Receiving; |
| 81 CRS 324 | Conspiracy to Commit Larceny; |
| 81 CRS 325 | Accessory Before Fact of Larceny; |
| 81 CRS 1554 | Receiving. |

In Rockingham County, Plaintiff was convicted of the following felonies:

| | |
|---|---|
| 77 CRS 1697 | Conspiracy to Commit Grand Larceny; |
| 77 CRS 1699 | Receiving Stolen Property. |

Our Court in *Baysden* declared that the number of felonies is not dispositive of a felon's right to legally possess a firearm. *Id.* at ___, 718 S.E.2d at 705-06. Further, our Court noted that we should be persuaded by " 'uncontested lifelong non-violence towards other citi-

zens.' " *Id.* at ___, 718 S.E.2d at 705 (quoting *Britt*, 363 N.C. at 550, 681 S.E.2d at 323). Under the majority's analysis, it appears that there is no limit to the number of felony convictions permissible for a felon to lawfully possess a firearm under the statute. If this statute is in violation of the constitution as applied to this Plaintiff, it is difficult to imagine to whom, regardless of the number of felony convictions accrued, it applies. I would proffer that Plaintiff's ten felony convictions are excessive by any means.

Further, I would contend that Plaintiff's previous convictions were violent. The majority in *Baysden* concluded that "statutory definitions [do not] control our determination of" which crimes are violent and we should instead examine the specific conduct involved in each conviction. *Id.* at ___, 718 S.E.2d at 705. Such a rule requires us to look at the circumstances of the crime and not rely solely on the statutory definitions; but it does not preclude consideration of statutory definitions, as these provide the backbone of those circumstances. One may not be convicted of the crime without performing each of the statutorily required elements, thus the conviction itself provides the basic circumstances of the act in question. I would nonetheless contend that the circumstances required for a conviction of fraudulently burning a dwelling are necessarily violent.

By statute, fraudulently burning a dwelling occurs

> [i]f any person, being the occupant of any building used as a dwelling house, whether such person be the owner thereof or not, or, being the owner of any building designed or intended as a dwelling house, shall wantonly and willfully or for a fraudulent purpose set fire to or burn or cause to be burned, or aid, counsel or procure the burning of such building.

N.C. Gen. Stat. § 14-65 (2011). Our Supreme Court has held that

> for a burning of a dwelling to be criminal under G.S. 14-65 as a willful and wanton burning, it must be shown to have been done intentionally, without legal excuse or justification, and with the knowledge that the act will endanger the rights or safety of others or with reasonable grounds to believe that the rights or safety of others may be endangered.

*State v. Brackett*, 306 N.C. 138, 142, 291 S.E.2d 660, 662-63 (1982). Thus, where the offense is willful and wanton, it requires and recognizes a risk to human safety and life. Thus, the mere use of fire to burn a home, or anything for that matter, when one is merely acting with a fraudulent purpose, is, at the very least, a dangerous act per se.

When these concepts are combined in the context of using fire to destroy a house for pecuniary gain with disregard for the inherent risk to life and safety, whether we draw upon the statutory definitions of what should be considered a violent or non-violent crime, *see* N.C. Gen. Stat. § 14-415.4, or disregard it as our precedent now requires, I see no conclusion other than that such an act is violent. Even where we completely disregard any statutory guidance, I contend that the very nature of fire and of the act of setting fire to a home, for whatever purpose, is violent *per se*.

The majority *sub judice* regards this dissent as ignoring the precedent set by *Baysden* because I engage in the above analysis to determine whether Plaintiff's prior conviction was violent. However, I believe such an analysis, rather than remanding, is precisely what *Baysden* requires of this Court. *Baysden* does not remand for further findings as to the precise circumstances of Baysden's possession of the shotgun. *Baysden*, ___ N.C. App. at ___, 718 S.E.2d at 705. Instead, the majority in *Baysden* summarily concluded that because of "the absence of any indication that [Baysden] did anything other than possess that inoperable object, [it was] unable to conclude that [Baysden's] prior convictions include 'violent' crimes for purposes of the constitutional analysis required." *Id.* at ___, 718 S.E.2d at 705 (footnote omitted). In other words, *Baysden* permits this Court to determine whether a crime was violent based only on the evidence before it. The evidence before this Court *sub judice*, as discussed above, indicates that Plaintiff used fire, an inherently dangerous object, to burn a dwelling home, despite the unpredictable nature of fire and the risk that fire poses to human life. This is a violent crime per se. Under the precedent of *Baysden*, we need not remand to have the trial court make such a finding.