IN THE SUPREME COURT OF NORTH CAROLINA

No. 140PA18

Filed 16 August 2019

STATE OF NORTH CAROLINA

v.

ROBERT DWAYNE LEWIS

On discretionary review pursuant to N.C.G.S. § 7A-31 of a consolidated appeal

from two decisions of the Court of Appeals, one a published opinion reported at 816

S.E.2d 212 (N.C. Ct. App. 2018), vacating and remanding judgments entered on 7

February 2017 by Judge Richard T. Brown in Superior Court, Hoke County, and the

other an unpublished opinion reported at 812 S.E.2d 730 (N.C. Ct. App. 2018),

vacating and remanding judgments entered on 6 April 2017 by Judge Kendra D. Hill

in Superior Court, Johnston County. Heard in the Supreme Court on 13 May 2019 in

session in the Halifax County Courthouse in the Town of Halifax pursuant to section

18B.8 of Chapter 57 of the 2017 Session Laws of the State of North Carolina.

*Joshua H. Stein, Attorney General, by Milind Dongre, Assistant Attorney General, for the State-appellant/appellee.*

*Glenn Gerding, Appellate Defender, by Kathryn L. VandenBerg, Assistant Appellate Defender, for defendant-appellant/appellee.*

DAVIS, Justice.

This case presents the unique circumstances of an officer possessing

information that would suffice to establish probable cause for the issuance of a search

warrant but failing to include pertinent portions of this information in his affidavit in support of the warrant. Because we conclude that the omission of key facts in the search warrant application in this case resulted in a lack of probable cause for the issuance of the search warrant for either defendant's residence or vehicle, we affirm in part and reverse in part the decision of the Court of Appeals.

**Factual and Procedural Background**

On 21 September 2014, a man armed with a handgun and wearing dark clothing and a blue piece of cloth covering his face entered a Family Dollar store in Hoke County. The man told a store employee to take the money from the store's safe, place the money in a bag, and give the bag to him. After the employee complied with his demand, the man told her to go into the bathroom and stay there until he had exited the store. A witness outside the store saw the man flee the scene in a dark blue Nissan Titan pickup truck.

A similar robbery occurred at a Dollar General store in Hoke County on 26 September 2014. On that occasion, as two employees were closing the store, a man holding a handgun and wearing dark clothing and a blue face covering approached them. He directed the employees to empty the money from the safe and cash registers into a bag and give it to him. The suspect then ordered the employees to enter the bathroom and remain there until he left the store.

Two days later, on 28 September, a third robbery took place at another Dollar General store in Hoke County. A man armed with a handgun and wearing dark

clothing and a blue face covering ordered store employees to give him the money in the store's safe. Upon obtaining the money, the man ordered the employees to go into the bathroom and then fled the premises. Law enforcement officers did not receive a description of the vehicle driven by the suspect for either the 26 September or 28 September robberies.

A fourth robbery took place during the early morning hours of 19 October 2014 at a Sweepstakes store in Smithfield in nearby Johnston County. A man armed with a handgun wearing dark clothing and a blue face covering forced an employee to retrieve money from the store's safe. As he exited the store, the man was recognized and identified as defendant Robert Dwayne Lewis by a Smithfield police officer who was familiar with him from a previous encounter. Defendant fled the scene in a dark gray Kia Optima. Law enforcement officers subsequently engaged in a high-speed pursuit but were unable to apprehend defendant during the chase.

That same day, officers from the Smithfield Police Department notified the Hoke County Sheriff's Office of the Sweepstakes store robbery and asked that deputies be on the lookout for a dark gray Kia Optima being driven by defendant. The officers also provided the license plate number of the Kia Optima and informed the Sheriff's Office that the address associated with the Kia Optima's registration was 7085 Laurinburg Road in Raeford, North Carolina.

Shortly after beginning his shift at 7:00 a.m. on 19 October 2014, Deputy Tim Kavanaugh of the Hoke County Sheriff's Office drove past the residence located at

7085 Laurinburg Road. He observed a blue Nissan Titan truck parked in the yard in front of the home. Deputy Kavanaugh did not, however, see a Kia Optima matching the description of the vehicle observed in connection with the Smithfield robbery earlier that morning.

Deputy Kavanaugh then continued with his normal patrol duties. He drove back by the home at 7085 Laurinburg Road at approximately 1:00 p.m. on that same day. At that time, Deputy Kavanaugh saw a dark gray Kia Optima parked in the yard in front of the house in addition to the Nissan Titan that he had previously observed. He then parked across the street from the home "[t]o see if [he] could possibly identify anybody coming from the residence . . . or . . . one of the vehicles leaving from the residence."

Shortly thereafter, a man matching the suspect's description exited the house and walked to the residence's mailbox across the street. Deputy Kavanaugh approached the man and asked him for his name. The man identified himself as Robert Lewis, after which Deputy Kavanaugh immediately placed him under arrest.

After arresting defendant, Deputy Kavanaugh approached the residence and spoke to Waddell McCollum, defendant's stepfather, on the front doorstep of the home. McCollum informed Deputy Kavanaugh that defendant lived at the residence. He further stated that defendant owned the Kia Optima and that, although McCollum owned the Nissan Titan, defendant also drove that vehicle on occasion.

When he finished speaking to McCollum, Deputy Kavanaugh walked over to the Kia Optima parked in the front yard "and looked inside of the passenger area, the rear of the vehicle, and observ[ed] in plain sight a BB&T money bag on the passenger floor of the vehicle." Deputy Kavanaugh also saw dark clothing in the back seat of the Kia.

Following defendant's arrest, Detective William Tart of the Hoke County Sheriff's Office—who had been investigating the three Hoke County robberies—prepared a search warrant application seeking permission to search the residence at 7085 Laurinburg Road as well as the Nissan Titan and Kia Optima parked in front of the home. The sworn affidavit accompanying Detective Tart's search warrant application described in detail the 21 September, 26 September, and 28 September 2014 Hoke County robberies as well as the 19 October 2014 Johnston County robbery. The affidavit noted the similarities between the four robberies as to both the clothing worn by the robber and the manner in which the crimes were carried out. The affidavit also stated that Smithfield police officers had identified defendant as the perpetrator of the 19 October 2014 robbery and that he had been arrested at the 7085 Laurinburg Road residence. The affidavit, however, failed to (1) disclose that defendant lived at 7085 Laurinburg Road, (2) contain any other information linking defendant to that address, (3) describe the circumstances surrounding his arrest at that address, or (4) mention Deputy Kavanaugh's interactions with defendant or his stepfather.

With regard to the vehicles, the affidavit stated that defendant had driven away from the 21 September Hoke County robbery in a dark blue Nissan Titan and that he had fled the scene of the 19 October Johnston County robbery in a Kia Optima. The affidavit further related that a dark blue Nissan Titan "was observed at the residence of 7085 Laurinburg Road . . . on October 19, 2014 by Hoke County Patrol Deputies when serving a felony arrest warrant on [defendant]." The affidavit did not mention the fact that Deputy Kavanaugh had also seen a Kia Optima parked in front of the residence. Nor did it relate that the deputy had seen potentially incriminating evidence upon looking into the window of the Kia Optima.

An unsworn attachment to the search warrant application listed a "dark blue Nissan Titan pick-up truck" and a "gray 2013 Kia Optima EX four door car" among the property to be searched by law enforcement officers if the warrant was issued. This attachment also contained registration information and a VIN number for each vehicle. Based upon the information provided in Detective Tart's affidavit, a magistrate issued a search warrant for the 7085 Laurinburg Road residence, the Nissan Titan, and the Kia Optima.

Detective Tart executed the search warrant on 19 October 2014. He seized various items of evidence that were located inside the Kia Optima. These items included the BB&T bank bag that Deputy Kavanaugh had previously viewed through the window of the vehicle, which contained receipts and other documents connected to the Smithfield robbery. Detective Tart also seized a blue helmet liner that was

consistent with the face covering worn by the suspect and a rusty handgun from the Kia.[1]

On 21 September 2015, defendant was indicted by a Hoke County grand jury on three counts of robbery with a dangerous weapon, five counts of second-degree kidnapping, and one count of attempted robbery with a dangerous weapon.[2] He was indicted on 5 October 2015 by a Johnston County grand jury on charges of robbery with a dangerous weapon and two counts of second-degree kidnapping. A second Johnston County grand jury subsequently indicted him on 2 November 2015 for common law robbery.[3]

On 2 March 2016, defendant filed motions to suppress in both the Superior Court, Hoke County and the Superior Court, Johnston County in which he sought to exclude evidence obtained during the execution of the search warrant by Detective Tart. In his motion, he argued that the evidence should be suppressed on the grounds that (1) an "insufficient connection" existed "between the items sought and property to be searched," and (2) the search of the Kia Optima was not permissible under the plain view doctrine.

---

[1] The record is unclear as to the nature of the evidence discovered by Detective Tart during his search of the residence or the Nissan Titan.

[2] Defendant's indictment for attempted robbery with a dangerous weapon stemmed from a separate incident that allegedly occurred on 9 September 2014.

[3] The indictment for common law robbery was based on a separate incident alleged to have occurred on 30 August 2014.

Defendant's motion to suppress was heard on 7 April 2016 in Superior Court, Hoke County before the Honorable Tanya T. Wallace. Both Deputy Kavanaugh and Detective Tart testified at the hearing. During his testimony, Deputy Kavanaugh related that he traveled to the Laurinburg Road residence on 19 October 2014 in response to a report from Johnston County law enforcement officers that a possible suspect living at that location had been seen fleeing the scene of the Smithfield robbery in a Kia Optima. He further testified that the report provided a description of the suspect as well as his name (identifying him as defendant) and address. Deputy Kavanaugh also stated that while on the premises of the residence, he spoke with defendant's stepfather, who confirmed that defendant lived at 7085 Laurinburg Road. Deputy Kavanaugh testified that following his conversation with defendant's stepfather, he observed dark clothing and a BB&T bank bag through the window of the Kia Optima.

On 10 June 2016, the trial court entered an order denying defendant's motion to suppress. In its order, the court concluded that the affidavit in support of Detective Tart's search warrant application sufficiently established probable cause to support the magistrate's issuance of a warrant authorizing a search of the 7085 Laurinburg Road residence, the Nissan Titan, and the Kia Optima. The court further ruled that "[n]otwithstanding the affidavit of probable cause to search the Kia," the evidence viewed by Deputy Kavanaugh through the window of the Kia Optima before issuance of the search warrant was lawfully obtained under the plain view doctrine.

On 7 February 2017, defendant entered an *Alford* plea in Superior Court, Hoke County as to all the charges for which he had been indicted in that county but expressly preserved his right to appeal the denial of his motion to suppress. The Honorable Richard T. Brown sentenced him to three consecutive terms of 103 to 136 months of imprisonment. Defendant gave timely notice of appeal from the Hoke County judgments to the Court of Appeals.

On 6 April 2017, defendant entered an *Alford* plea in Superior Court, Johnston County to the charges for which he had been indicted in that venue. He once again preserved his right to appeal the denial of his motion to suppress.[4] The Honorable Kendra D. Hill sentenced him to terms of imprisonment of 103 to 136 months for his robbery with a dangerous weapon conviction, 50 to 72 months for each second-degree kidnapping conviction, and 25 to 39 months for his common law robbery conviction—all to be served consecutively. Defendant filed a timely notice of appeal from the Johnston County judgments to the Court of Appeals.

In the Court of Appeals, defendant argued that Judge Wallace erred by denying his motion to suppress because (1) the search warrant affidavit submitted by Detective Tart was insufficient to establish probable cause to search either the home at 7085 Laurinburg Road or the two vehicles parked in front of the residence, and (2)

---

[4] No separate order was entered in the Superior Court, Johnston County matter in connection with defendant's motion to suppress. Instead, it appears from the record that Judge Wallace's order was made a part of the court file in the Johnston County case.

the plain view doctrine did not permit the search of the Kia Optima. On 1 May 2018, the Court of Appeals issued two opinions regarding defendant's separate appeals from the Hoke County and Johnston County judgments. A published opinion, *State v. Lewis*, 816 S.E.2d 212 (N.C. Ct. App. 2018) (*Lewis I*), addressed defendant's Hoke County appeal, and an unpublished opinion, *State v. Lewis*, 812 S.E.2d 730, 2018 WL 2016031 (N.C. Ct. App. 2018) (unpublished) (*Lewis II*), addressed his Johnston County appeal.

In its published opinion, the Court of Appeals held that the affidavit supporting Detective Tart's search warrant application was sufficient to establish probable cause to search the Nissan Titan and Kia Optima parked in front of the residence but was insufficient to establish probable cause to search the dwelling itself. *Lewis I*, 816 S.E.2d at 213. With regard to its conclusion that the search warrant affidavit did not establish probable cause to search the home, the Court of Appeals noted that the affidavit failed to state that defendant resided at 7085 Laurinburg Road. *Id.* at 217. The Court of Appeals further reasoned that, based solely upon the information contained in the affidavit, "7085 Laurinburg Road could have been . . . someone else's home with no connection to Lewis at all. That Lewis visited that location, without some indication that he may have stowed incriminating evidence there, is not enough to justify a search of the home." *Id.*

With regard to the vehicles, the Court of Appeals held that probable cause existed for the issuance of the warrant because Detective Tart's affidavit "contained

enough information, together with reasonable inferences drawn from that information, to establish a substantial basis to believe that the evidence sought probably would be found in the blue Nissan Titan and Kia Optima located at 7085 Laurinburg Road." *Id.* at 216. The Court of Appeals explained its reasoning as follows:

> There was evidence that the same suspect committed four robberies, the first while driving a dark blue Nissan Titan and the fourth while driving a Kia Optima. Later on the same day of the fourth robbery, officers arrested Lewis. When they located him they saw—of all the makes, models, and colors of all the vehicles in the world—a dark blue Nissan Titan, matching the description of the vehicle used in the first robbery. These facts were more than sufficient for the magistrate to conclude that, if officers returned to that location and found a dark blue Nissan Titan and Kia Optima there, there was probable cause to believe that those vehicles contained evidence connected to the robberies.

*Id.* at 217.

Because it could not determine from the record "which evidence officers seized from the vehicles and which evidence they seized from the home," the Court of Appeals vacated defendant's convictions and remanded the case "with instructions for the trial court to allow [defendant's] motion to suppress the evidence seized from the residence located at 7085 Laurinburg Road." *Id.* Based upon its holding that probable cause supported the issuance of the search warrant for the vehicles, the Court of Appeals did not address defendant's additional argument that a search of the Kia Optima was not supported by the plain view doctrine. *Id.* at 217. In its opinion

in *Lewis II*, the Court of Appeals reached identical conclusions regarding the trial court's order denying defendant's motions to suppress.[5]

The State filed petitions for discretionary review on the issue of whether probable cause existed to support a search of the residence. Defendant, in turn, filed petitions for discretionary review on the issue of whether the search warrant affidavit established probable cause to search the Kia Optima. We granted all of the parties' petitions.[6]

**Analysis**

The Fourth Amendment to the United States Constitution states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. " '[A] neutral and detached magistrate,' not an 'officer engaged in the often competitive enterprise of ferreting out crime,' must determine whether probable cause exists." *State v. Allman*, 369 N.C. 292, 294, 794 S.E.2d 301, 303 (2016) (quoting *Illinois v. Gates*, 462 U.S. 213, 240, 76 L. Ed. 2d 527, 549 (1983)). This determination must be based upon the totality of the circumstances. *E.g.*, *State v. Benters*, 367 N.C. 660, 664, 766 S.E.2d 593, 597 (2014).

---

[5] Based upon its ruling that defendant's convictions must be vacated, the Court of Appeals dismissed as moot a petition for certiorari filed by defendant seeking review of the factual basis for his *Alford* pleas to the two second-degree kidnapping charges. *Lewis II*, 2018 WL 2016031, at *1.

[6] The parties' appeals from *Lewis I* and *Lewis II* were subsequently consolidated for review by this Court.

"The task of the issuing magistrate is simply to make a practical, common[-]sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Arrington*, 311 N.C. 633, 638, 319 S.E.2d 254, 257–58 (1984) (quoting *Gates*, 462 U.S. at 238, 76 L. Ed. 2d at 548). It is well established that "a magistrate is entitled to draw reasonable inferences from the material supplied to him by an applicant for a warrant." *State v. Sinapi*, 359 N.C. 394, 399, 610 S.E.2d 362, 365 (2005) (citation omitted). This Court has opined that "as long as the pieces fit together well and yield a fair probability that a police officer executing the warrant will find contraband or evidence of a crime at the place to be searched, a magistrate has probable cause to issue a warrant." *Allman*, 369 N.C. at 294, 794 S.E.2d at 303.

We have recognized that "great deference should be paid a magistrate's determination of probable cause and . . . after-the-fact scrutiny should not take the form of a *de novo* review." *Arrington*, 311 N.C. at 638, 319 S.E.2d at 258. Thus, "[r]eviewing 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' " *Allman*, 369 N.C. at 294, 794 S.E.2d at 303 (second and third alterations in original) (quoting *State v. Riggs*, 328 N.C. 213, 221, 400 S.E.2d 429, 434 (1991)). "This deference, however, is not without limitation. A reviewing court has the duty to ensure that a magistrate does not abdicate his or her duty by 'mere[ly] ratif[ying] . . . the bare conclusions of

[affiants].' " *Benters*, 367 N.C. at 665, 766 S.E.2d at 598 (alterations in original) (quoting *Gates*, 462 U.S. at 239, 76 L. Ed. 2d at 549).

## I. Search of Residence

We first address whether the search warrant affidavit at issue established probable cause for law enforcement officers to conduct a search of the residence located at 7085 Laurinburg Road. In evaluating the sufficiency of the affidavit, we are guided by our decision in *State v. Campbell*, 282 N.C. 125, 191 S.E.2d 752 (1972).

In *Campbell* the defendant lived in a home with two roommates. *Id.* at 130, 191 S.E.2d at 756. All three residents of the dwelling were suspected drug dealers with outstanding arrest warrants for the sale and possession of narcotics. *Id.* at 130, 191 S.E.2d at 756. Law enforcement officers sought to obtain a search warrant for the residence. The affidavit in support of the warrant stated that the affiant possessed arrest warrants for the three men living in the home. *Id.* at 130, 191 S.E.2d at 756. It further reported that the defendant and his roommates "all have sold narcotics to Special Agent J. M. Burns of the SBI and are all actively involved in drug sales to Campbell College students; this is known from personal knowledge of affiant, interviews with reliable confidential informants and local police officers." *Id.* at 130, 191 S.E.2d at 756.

We held that the affidavit was "fatally defective," explaining our reasoning as follows:

> The affidavit implicates those premises *solely as a*

> *conclusion of the affiant.* Nowhere in the affidavit is there
> any statement that narcotic drugs were ever possessed or
> sold in or about the dwelling to be searched. Nowhere in
> the affidavit are any underlying circumstances detailed
> from which the magistrate could reasonably conclude that
> the proposed search would reveal the presence of illegal
> drugs in the dwelling. The inference the State seeks to
> draw from the contents of this affidavit—that narcotic
> drugs are illegally possessed on the described premises—
> does not reasonably arise from the facts alleged. Therefore,
> nothing in the foregoing affidavit affords a reasonable basis
> upon which the issuing magistrate could conclude that any
> illegal possession or sale of narcotic drugs had occurred, or
> was occurring, on the premises to be searched.

*Id.* at 131, 191 S.E.2d at 757.

This Court reached a contrary conclusion in *Allman* with respect to whether a search warrant affidavit established probable cause to search the defendant's residence. In *Allman,* the defendant, Brittany Allman, lived in a home with half-brothers named Sean Whitehead and Jeremy Black, to whom she was not related.[7] *Allman*, 369 N.C. at 292, 794 S.E.2d at 302. Law enforcement officers sought a search warrant for the residence after stopping a vehicle in which Whitehead and Black were traveling, leading to the discovery of 8.1 ounces of marijuana and over $1600 in cash inside the car. *Id.* at 292–93, 794 S.E.2d at 302.

The affidavit accompanying the search warrant in *Allman*—in addition to describing the discovery of contraband in the vehicle—stated that the affiant had run

---

[7] Although the opinion in *Allman* related primarily to the activities of Whitehead and Black, the defendant was also charged with offenses pertaining to the manufacture, possession, and sale or delivery of illegal drugs.

criminal record checks on the two men and learned that both of them had been previously charged with offenses related to the sale and possession of illegal drugs. *Id.* at 295, 794 S.E.2d at 304. The affidavit further stated the following:

> During the vehicle stop, Whitehead maintained that he and Black lived at 30 Twin Oaks Drive in Castle Hayne, North Carolina. . . .
>
> On the same day as the vehicle stop, [the affiant] went to 30 Twin Oaks Drive. When he got there, he discovered that neither half-brother lived at that address but that Whitehead's and Black's mother, Elsie Black, did. Ms. Black told Detective Bacon that the two men lived at 4844 Acres Drive in Wilmington and had not lived at 30 Twin Oaks Drive for about three years. She described the Acres drive property as a small one-story residence that had "a big, tall privacy fence in the backyard" and said that "there should be an old red truck and an old white truck at the house." At that point, another detective went to 4844 Acres Drive. The property matched the description given by Ms. Black, and one of the two trucks outside of the house was registered to Jeremy Black.

*Id.* at 295, 794 S.E.2d at 304 (footnote omitted).

This Court held that the facts set out in the affidavit were sufficient to establish probable cause to search the Acres Drive residence that the defendant shared with the two men. *Id.* at 298, 794 S.E.2d at 306. While "acknowledg[ing] that nothing in Detective Bacon's affidavit directly linked defendant's home with evidence of drug dealing," *id.* at 297, 794 S.E.2d at 305, we determined that the magistrate could have reasonably inferred that evidence of drug dealing was likely to be found in the home

> [b]ased on the mother's statement that Whitehead and Black really lived at [the same residence as the defendant] . . . . [a]nd based on the insight from Detective Bacon's training and experience that evidence of drug dealing is likely to be found at a drug dealer's home, and the fact that Whitehead lied about where he and Black lived . . . .

*Id.* at 296, 794 S.E.2d at 305. We distinguished the facts and result in *Allman* from our decision in *Campbell*, in part, by noting that "while a suspect in this case lied to [the officer who stopped their vehicle] about his true address, nothing in the *Campbell* opinion indicates that any of the subjects of that search lied to the authorities about their home address. So *Campbell* does not alter our conclusion." *Id.* at 297, 794 S.E.2d at 305.

In *State v. McKinney*, 368 N.C. 161, 775 S.E.2d 821 (2015), we likewise distinguished *Campbell* in holding that probable cause supported the issuance of a warrant to search the dwelling of a suspected drug dealer. *Id.* at 166, 775 S.E.2d at 825–26. In *McKinney*, law enforcement officers received a tip that the defendant was conducting drug deals in his apartment as well as in the parking lot of his apartment complex. *Id.* at 162, 775 S.E.2d at 823. In response to the tip, officers began surveilling the defendant's residence. They observed a visitor leave the dwelling after only being there six minutes. *Id.* at 162, 775 S.E.2d at 823. After stopping the visitor's vehicle for a traffic violation, officers discovered marijuana in the car and $4258 in cash on the driver's person. *Id.* at 162, 775 S.E.2d at 823. Officers arrested Roy Foushee, the driver of the vehicle, and subsequently found texts on his cell phone in

which he appeared to have arranged a drug transaction with the defendant that coincided with the timing of his visit to the defendant's apartment. *Id.* at 162, 775 S.E.2d at 823.

Following this arrest, law enforcement officers sought and obtained a search warrant for the defendant's apartment. The affidavit accompanying the warrant application "described the nature of the citizen complaint that triggered the investigation, the results of the officers' surveillance, the arrest of Foushee, the material found on Foushee's person and in his car, and the text messages recovered from Foushee's telephone." *Id.* at 162, 775 S.E.2d at 823. In concluding that the statements contained in the affidavit were sufficient to support the issuance of a search warrant for the defendant's residence, we distinguished the circumstances at issue in that case from those of *Campbell*. "Unlike the case at bar, the affidavit in *Campbell* included no information indicating that drugs had been possessed in or sold from the dwelling to be searched. As a result, *Campbell* does not control the outcome here." *Id.* at 166, 775 S.E.2d at 826.

In the present case the search warrant affidavit submitted by Detective Tart contained statements that a suspect wearing dark clothing, using a blue face covering, and carrying a handgun had committed similar robberies of Hoke County stores on 21 September, 26 September, and 28 September 2014. The affidavit also stated that the suspect fled the scene of the first robbery in a "dark blue Nissan Titan with an unknown NC registration. This description is consistent with a dark blue

Nissan Titan that was observed at the residence of 7085 Laurinburg Road . . . on October 19, 2014 by Hoke County Patrol Deputies when serving a felony arrest warrant on Robert Lewis."

The affidavit further asserted that a Sweepstakes store in Johnston County was robbed "in the earlier hours of [the] morning" of 19 October by a man armed with a handgun who was wearing dark clothing and a blue face covering. The affidavit stated that "[t]he clothing description and method of operation were similar to those robberies previously described within Hoke County." In addition, the affidavit contained a statement that the suspect had been identified as defendant by Smithfield law enforcement officers and had fled the scene in a Kia Optima.

Critical to our analysis of this issue, however, is the information that was *not* contained in Detective Tart's affidavit. His affidavit failed to set forth any of the circumstances surrounding defendant's arrest at 7085 Laurinburg Road and offered no explanation as to why law enforcement officers had gone to that address in the first place. Notably, the affidavit did not include the fact that the address had been provided by Johnston County law enforcement officers. It also failed to include any details of Deputy Kavanaugh's conversation with defendant's stepfather—who had confirmed that defendant lived in the home—and contained no mention of the fact that a Kia Optima was parked in front of the residence at the time of defendant's arrest.

We conclude that the information contained in the affidavit failed to establish

the existence of probable cause to search the residence at 7085 Laurinburg Road. The affidavit simply did not connect defendant with the residence that the officers wished to search in any meaningful way beyond the mere fact that he was arrested there and that a dark blue Nissan Titan was observed in the vicinity of the house at that time. Defendant could have been present at 7085 Laurinburg Road at the time of his arrest for any number of reasons. Absent additional information linking him to the residence or connecting the house with criminal activity, no basis existed for the magistrate to infer that evidence of the robberies would likely be found inside the home.

The State relies heavily on *Allman* in support of its argument that probable cause existed to support the issuance of a search warrant for 7085 Laurinburg Road even in the absence of evidence directly linking the residence with the robberies. But *Allman* is easily distinguishable. In that case the officer's affidavit established that a suspected drug dealer had lied about where he lived—suggesting that evidence of criminal activity would likely be found in his residence. *Allman*, 369 N.C. at 295, 794 S.E.2d at 304. The affidavit further noted that law enforcement officers had later received information from the suspects' mother as to their actual address and subsequently corroborated that information before applying for a search warrant. *Id.* at 295, 794 S.E.2d at 304. Unlike the present case, the affidavit in *Allman* stated not only that the residence to be searched was connected to the suspects but also that— based on the officer's training and experience and the fact that one of the suspects

had lied about where they lived—it likely contained evidence of the crime for which a warrant was sought. *Id.* at 295–96, 794 S.E.2d at 304. *McKinney* is likewise distinguishable from the present case because the search warrant affidavit there contained information implicating both the defendant and his residence in the criminal activity being investigated. *McKinney*, 368 N.C. at 166, 775 S.E.2d at 826.

We therefore hold that the allegations contained in Detective Tart's affidavit failed to provide the magistrate with a sufficient basis from which to conclude that probable cause existed to search the 7085 Laurinburg Road residence.[8] Accordingly, we affirm the ruling of the Court of Appeals that defendant's motion to suppress evidence seized from the residence should have been allowed.

## II.  Search of the Kia Optima

The final issue before us is whether Detective Tart's affidavit in support of the search warrant established probable cause to support a search of the Kia Optima.[9] Defendant argues that the Court of Appeals erred in affirming the trial court's

---

[8] We note that in its order denying defendant's motion to suppress, the trial court relied, in part, upon testimony at the suppression hearing from Deputy Kavanaugh and Detective Tart that was not contained in Detective Tart's affidavit. The court's reliance on this testimony was improper because it was required to evaluate the existence of probable cause for the search warrant based solely on the information in the affidavit that was available to the magistrate at the time the warrant was issued. *See Benters*, 367 N.C. at 673–74, 766 S.E.2d at 603 (appellate court erred in determining existence of probable cause to support issuance of search warrant by "relying upon facts elicited at [the suppression] hearing that went beyond 'the four corners of [the] warrant.'" (second alteration in original)).

[9] In his appeal to this Court, defendant has not argued that probable cause was lacking for the search of the Nissan Titan. Therefore, that issue is not before us.

determination that probable cause existed to support that search because the affidavit failed to "explain why evidence . . . would be found in the Kia Optima listed as a vehicle to be searched" or "state that there was a Kia Optima at the Laurinburg Road address."

In focusing—as we must—not on the totality of the evidence that Detective Tart had gathered but rather solely on the information that was actually set out in his affidavit, we agree that the affidavit failed to establish probable cause for the search of the Kia Optima. As noted above, the statements in Detective Tart's affidavit failed to mention the presence of a Kia Optima at 7085 Laurinburg Road at the time of defendant's arrest. Indeed, beyond stating that defendant fled the scene of the 19 October 2014 robbery in a "new model 4-door Kia Optima," the affidavit provided no other information whatsoever concerning the Kia Optima.[10]

It is true that an unsworn attachment to the search warrant application listed "[a] gray 2013 Kia Optima EX four door car with NC registration BMB4863; VIN# 5XXGN4A7XDG192163" among the property to be searched by officers upon execution of the search warrant. But Detective Tart's sworn affidavit itself contained no mention of this identifying information for the vehicle. Nor did it explain how this information had been obtained. Consequently, while the information possessed by

---

[10] The affidavit failed to mention that Deputy Kavanaugh had even seen the Kia Optima, much less that he had observed the presence of potentially incriminating evidence upon looking through the window of the vehicle.

Detective Tart would have been sufficient to authorize a search warrant for the Kia Optima had it all been contained within his affidavit, his failure to include crucial information concerning the vehicle rendered the affidavit insufficient to establish probable cause.

Accordingly, we hold that the Court of Appeals erred in affirming the trial court's determination that probable cause existed to support the issuance of a search warrant for the Kia Optima. Because the Court of Appeals did not address the trial court's alternative ruling that the search of the vehicle was supported under the plain view doctrine, we remand this case to the Court of Appeals for a determination of that issue.

## Conclusion

For the reasons set forth above, we affirm the portions of the Court of Appeals' decisions holding that defendant's motion to suppress should have been allowed as to evidence seized from defendant's residence and reverse the portions of the Court of Appeals' decisions holding that probable cause existed to support the issuance of the search warrant for the Kia Optima. The Court of Appeals' ruling that probable cause existed to support the search of the Nissan truck is not before us and is left undisturbed. We remand this case for determination by the Court of Appeals whether the evidence seized from the Kia Optima was admissible under the plain view doctrine.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Justice MORGAN concurring in part and dissenting in part.

I respectfully dissent from the position taken by my learned colleagues of the majority that there was a lack of probable cause for the issuance of the search warrant by the magistrate to authorize law enforcement's search of defendant's Kia Optima. While I agree with the majority view which concludes that the Court of Appeals correctly determined that defendant's motion to suppress should have been allowed as to evidence seized from his residence because the information contained in the search warrant did not sufficiently connect defendant to the house so as to provide a basis for the magistrate to infer that evidence of the robberies would likely be found in the home, nonetheless I disagree with the outcome that the lower appellate court should be reversed regarding its determination that probable cause existed to authorize the magistrate's issuance of the search warrant. Since I would therefore affirm in totality the decision of the Court of Appeals, consequently there would be no need for the case to be remanded to the lower appellate court, as directed by the majority, for a determination concerning whether the evidence seized from the Kia Optima was admissible under the plain view doctrine, because the application of the doctrine would be of no consequence in light of the finding of probable cause.

My discomfort with the majority's opinion stems from its regrettable rigidity in tightly clinging to the legal rudiments of the establishment and recognition of probable cause in search warrant affidavits which this Court has historically declared, while exhibiting its remarkable reticence to equally embrace the practical

realities which law enforcement officers and magistrates must face in the establishment and recognition of probable cause in search warrant affidavits which this Court has also addressed in its opinions. In my view, an appropriate balance of the considerations of legal requirements and practical aspects which this Court has cited regarding the existence of probable cause in search warrant applications would better serve the ends of justice in the instant case by determining the existence of probable cause in the search warrant affidavit at issue to allow the search of defendant's Kia Optima, demonstrating the proper balancing approach between legal requirements and practical aspects which govern the ascertainment of probable cause in search warrant affidavits, and providing a clearer precedent for law enforcement officers and magistrates to consult in order to better comprehend the salient circumstances to be submitted and evaluated for the existence of probable cause in search warrants.

The majority is certainly correct in its recitation of principles enunciated by this Court in such cases as *State v. Allman*, 369 N.C. 292, 794 S.E.2d 301 (2016), *State v. Benters*, 367 N.C. 660, 766 S.E.2d 593 (2014), *State v. Sinapi*, 359 N.C. 394, 610 S.E.2d 362 (2005), and *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984) regarding the requirement that a neutral and detached magistrate is to issue a search warrant only upon the existence of probable cause being shown, with such a determination to be made based upon the totality of the circumstances in arriving at a practical and commonsense decision in light of all of the circumstances set forth in

the affidavit. The prevailing viewpoint also recognizes the considerations declared in these rulings that appellate "courts should not invalidate [search] warrant[s] by interpreting [search warrant] affidavit[s] in a hypertechnical, rather than a commonsense, manner," *State v. Riggs*, 328 N.C. 213, 222, 400 S.E.2d 429, 434 (1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)), and that a magistrate is entitled to draw reasonable inferences from the material supplied through application for a search warrant and has probable cause to issue the warrant "as long as the pieces fit together well and yield a fair probability that a police officer executing the warrant will find contraband or evidence of a crime at the place to be searched . . . ." *Allman*, 369 N.C. at 294, 794 S.E.2d at 303 (citing *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984) (per curiam) and *Gates*, 462 U.S. at 230–31).

In the present case, while the majority has demonstrated its awareness of all of these guiding principles by citing them in its opinion, unfortunately the majority readily implements only the standards that it chooses to employ, and conveniently neglects the standards that it chooses to ignore. The majority has elected to emphasize that the investigating detective's search warrant affidavit "failed to mention the presence of a Kia Optima at 7085 Laurinburg Road at the time of defendant's arrest" and that "beyond stating that defendant fled the scene of the 19 October 2014 robbery in a 'new model 4-door Kia Optima,' the affidavit provided no other information whatsoever concerning the Kia Optima." However, as to the fact that "an unsworn attachment to the search warrant application listed '[a] gray 2013

Kia Optima EX four door car with NC registration BMB4863; VIN# 5XXGN4A7XDG192163' among the property to be searched by officers upon execution of the search warrant," the majority has elected to minimize the extensive detail utilized to identify the vehicle sought to be searched by opting to emphasize that the investigating detective's "sworn affidavit itself contained no mention of this identifying information for the vehicle." Based on these considerations, the majority concludes that if all of the aforementioned information had been contained in the investigating detective's sworn search warrant affidavit rather than in an unsworn attachment to the search warrant application, coupled with a sworn description of the manner in which he obtained this identifying information for the Kia Optima, then the search warrant would have been deemed to contain the requisite probable cause.

In applying this Court's enunciated principles that a magistrate is entitled to draw inferences from the material supplied to obtain a search warrant based upon the totality of the circumstances in arriving at a practical and commonsense decision in light of all of the circumstances set forth in the affidavit, I conclude that the magistrate satisfactorily determined that probable cause existed for the issuance of a search warrant to authorize law enforcement's search of defendant's Kia Optima. The majority's requirement that the information which establishes probable cause must be *included in* the sworn search warrant affidavit instead of *attached to* the sworn search warrant affidavit in order to be considered by a magistrate invokes the

type of hypertechnical mandate for a probable cause determination which this Court has expressly disavowed. Unfortunately, however, the majority here demands this kind of precision in lieu of the magistrate's practical and commonsense approach to construe the informative material which was physically appended to the sworn search warrant affidavit as being inherently intended in its presentation format to illustrate that it was a part of the entire search warrant application to be evaluated by the magistrate as to its fair probability that a police officer executing the warrant would find contraband or evidence of the Johnston County robbery in the Kia Optima. In light of all of these facts and circumstances which were being navigated by two different law enforcement agencies in two different counties which were coordinating their investigative resources in an effort to resolve a spate of crimes, the magistrate involved here should have been accorded the authority to refrain from imposing a hypertechnical requirement upon the investigating detective in favor of the practical and commonsense decision to consider the totality of the information contained in the combined application of the sworn search warrant affidavit as well as the unsworn attachment of detailed information which was physically appended to it in order to arrive at the determination of the existence of probable cause to search defendant's vehicle.

In the very first sentence of its opinion, the majority acknowledges that this case presents unique circumstances regarding an officer's possession of information "that would suffice to establish probable cause for the issuance of a search warrant

but fail[s] to include pertinent portions of this information in his affidavit in support of the warrant." "The resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Riggs*, 328 N.C. at 222, 400 S.E.2d at 435 (quoting *Gates*, 462 U.S. at 237 n.10) (brackets omitted). Guided by this Court's precedent in applying it to the recognized uniqueness of the circumstances presented in this case, I would affirm the decision of the Court of Appeals.

Justice NEWBY joins in this dissenting opinion.