IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1056

Filed 3 September 2025

Wake County, Nos. 19 CR 200509-910 & 19 CR 200225-910

STATE OF NORTH CAROLINA

v.

RUSSELL LEE WATKINS, Defendant.

Appeal by Defendant from judgment entered 17 January 2024 by Judge Claire V. Hill in Wake County Superior Court. Heard in the Court of Appeals 10 June 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Jeremy D. Lindsley, for the State.*

*Attorney W. Michael Spivey, for the Defendant–Appellant.*

MURRY, Judge.

Russell L. Watkins (Defendant) appeals the trial court's denial of his (1) motion to suppress evidence seized from his Honda and (2) motion to dismiss on the grounds that N.C.G.S. § 14-415.1 is unconstitutional both *prima facie* and as-applied to his conviction for possession of a firearm by a felon. For the reasons below, this Court holds that the trial court did not err in reaching either decision.

## I.   Background

Born in 1977, Defendant had intermittent run-ins with the law throughout his life. After incurring several convictions as a minor in 1993, Defendant was convicted

of three state cocaine-trafficking felonies in 1998 and a similar federal trafficking felony in 2012. Outside of this latter federal crime and a 2011 misdemeanor conviction for resisting arrest, Defendant largely avoided controversy until 2018.

On 17 December 2018, two of Defendant's friends, Jahmez Jackson and Zelix Johnson, robbed the house of their mutual acquaintance and her husband; the couple and her little sister were present at the time. Once inside, the armed and masked assailants zip-tied the residents and dragged them into their kitchen so that they could freely raid the house. Throughout the robbery, one of the assailants stayed "on the phone with someone who appeared to be telling them to hurry up" and "get out." Over the course of 15 minutes, they robbed the house of several thousands of dollars in both cash and portable valuables, most notably a "distinctive gold ring." Witnesses saw both Jackson and Johnson enter and flee the scene in "an old, dark[-]green Toyota Camry."

The husband soon freed himself after the assailants left, and his wife called the police. Once on the scene, investigators found a leftover trash bag in the house with Defendant's fingerprint. The victims also gave them a picture of the stolen ring that they then sent out to local pawn shops. One of the shops contacted Raleigh Police Senior Detective Brad Winston, who obtained a court order for Defendant's cell phone records after watching a security-camera video of him selling the ring. Those records confirmed several calls between Jackson and Defendant at the time of the robbery. Upon pulling Defendant's broader criminal record, Detective Winston discovered a

"recent police report involving him . . . from [four] days prior to the" robbery. This report documented an accusation that Defendant and one "Jasmine E. Elliott slashed the tires on a victim's car and fled the scene in her gray Honda Crosstour." (Quotation modified.) Detective Winston later confirmed through DMV records that Elliott and Defendant respectively owned the Toyota and Honda in question. He soon sought and obtained a warrant to search the Honda, where he discovered a handgun wrapped in a rag stashed under the hood.

Based in part on this search and other witnessed evidence, a grand jury indicted Defendant on 5 February 2019 for conspiracy to commit first-degree burglary, completed first-degree burglary (collectively, "burglary charges"), second-degree kidnapping, obtaining property by false pretenses (OPFP), robbery with a dangerous weapon, and possession of a firearm by a felon (POFBF)—all felonies. N.C.G.S. § 14-2.4(a) (2023) (conspiracy); *id.* § 14-39(b) (kidnapping); *id.* § 14-51 (burglary); *id.* § 14-100(a) (OPFP); *id.* § 14-87(a) (robbery); *id.* § 14-415.1(a) (POFBF).[1] Prior to the November 2023 trial, Defendant moved to suppress evidence seized from the Honda on the grounds that Detective Winston's application affidavit relied on "stale" information that did not reasonably supply probable cause necessary

---

[1] This opinion relies in part on subsequent amendments to N.C.G.S. § 14-415.1 in our analysis. Thus, we briefly pause to note that the General Assembly has substantially modified §§ 14-51, -415.1 through recent legislation set to take effect on 1 October 2025. *See* Act of July 9, 2025, S.L. 2025-71, secs. 8(a), 10(a) (to be codified at N.C.G.S. ch. 14).

under the Federal and State Constitutions. **{R p 47}** Defendant also moved pretrial to dismiss the POFBF charge, arguing that it violated both Constitutions' individual right to bear arms. The trial court denied both motions and permitted the case to proceed to trial.

At trial, a jury found Defendant guilty of the OPFP and POFBF charges but deadlocked on the remainder. At the 17 January 2024 sentencing hearing, Defendant entered into an agreement to plead guilty to the robbery and burglary charges in exchange for the State not pursuing the remaining deadlocked charges (as well as a habitual-felon-status charge). Prior to entering the State's custody, Defendant timely appealed as to the OPFP and POFBF charges at issue here.

## II.    Jurisdiction

This Court has jurisdiction to hear Defendant's appeal of his convictions because even though he "entered a plea of guilty," he is still "entitled to appeal as a matter of right the issue of whether his . . . sentence is supported by evidence introduced at the trial." N.C.G.S. § 15A-1444(a1) (2023). More specifically, he may appeal any "order finally denying a motion to suppress evidence," even if having first "ple[d] . . . guilty." *Id.* § 15A-979(b).

## III.    Analysis

On appeal, Defendant argues that the trial court erred (1) by denying his motion to suppress evidence because police investigators lacked any probable cause to seize evidence from his Honda and (2) by denying his motion to dismiss the POFBF

charge based on a statute that violated the Federal and State Constitutions. For the reasons below, this Court holds that the trial court did not err in either respect.

## A. Probable Cause

First, Defendant argues the search warrant lacked sufficient facts to show probable cause to suspect that he had incriminating evidence in his car. We disagree. In assessing a motion-to-suppress denial, we review "whether competent evidence supports the trial court's findings of fact" that, in turn, must "support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167–68 (2011). We review those conclusions *de novo* but leave the findings undisturbed absent an abuse of discretion by the trial court in reaching them. *See id.* at 168.

The Federal and State Constitutions permit law enforcement to search a private citizen's effects only "upon probable cause," U.S. Const. amend. IV, cl. 2, documented in a warrant "particularly described and supported by evidence." N.C. Const. art. I, § 20, cl. 3.[2] An application for a search warrant must specify "the facts and circumstances establishing probable cause" that incriminating evidence is "in the possession of the individuals to be searched." N.C.G.S. § 15A-244(3) (2023). Our Supreme Court defines probable cause as "a reasonable ground to believe that the proposed search will reveal" this evidence in a manner that "aid[s] in the

---

[2] Because North Carolina's Warrants Clause affords at least the same probable-cause protections as does its federal counterpart in this context, Defendant's outcome remains the same regardless of the particular Constitution scrutinized here. *See State v. Allman*, 369 N.C. 292, 293 (2016) ("[T]he probable[-]cause analysis under the federal and state [C]onstitutions is identical.").

apprehension or conviction of the offender." *State v. Campbell*, 282 N.C. 125, 128–29 (1972). Our appellate courts more generally assess this reasonability by a "totality of the circumstances" that, taken together, "yield a fair probability" that the executing officer "will find contraband or evidence of a crime at the place to be searched." *State v. Allman*, 369 N.C. 292, 294 (2016). We "defer[ ] to the magistrate's determination," *id.*, when concluding whether the supporting "affidavits . . . establish a nexus between the objects sought and the place to be searched," *State v. McCoy*, 100 N.C. App. 574, 576 (1990) (first citing *Campbell*, 282 N.C. at 129; and then citing Wayne A. LaFave, *Search and Seizure* § 3.1(b) n.26 (2d ed. 1987)).

Defendant misreads *State v. Lewis*, 372 N.C. 576 (2019), to suggest that the affidavit lacks "[ ]sufficient facts to show probable cause for the . . . search warrant" of his car. In *Lewis*, our Supreme Court tossed out a defendant's conviction based on the source affidavit's failure to document *any* "information whatsoever concerning the" relevant car searched. *Id.* at 589. Much like Defendant here, the *Lewis* defendant committed multiple crimes with an accomplice between two different cars (there, a dark-blue Nissan Titan and a dark-gray Kia Optima). *See id.* at 577–78. The arresting detective confirmed that the "defendant owned the Kia Optima and . . . also drove [the Nissan Titan] on occasion." *Id.* at 678. But the investigating detective stated in the affidavit only that the "defendant drove away from the first robbery in *a* Nissan Titan and fled the scene of the second robbery in *a* Kia Optima." *Id.* at 579 (citation modified; emphases added). Unlike with Defendant here, the *Lewis* affidavit

contained no specific link between the defendant and either *the* Nissan or *the* Kia to be searched upon its approval. *See id.*

Here, Defendant's own concessions on appeal demonstrate the probability that his Honda might "contain any evidence related to a crime." The search warrant application specifies that witnesses saw Jackson and Johnson "get out of an old, dark[-]green Toyota Camry" and "mask up before going into the residence" to rob the victims. The application also references a predated police investigation into Defendant that suspected him of slashing a third-party's car tires before "fle[eing] the scene in . . . a Honda" he ultimately owned. Detective Winston confirmed that only Elliott owned the Toyota, further supporting the inference that Defendant used his own car for this latter criminal purpose. Defendant thus exhibited a "nexus between [the incriminating] vehicle and" his actions in a similar manner as did the *Lewis* defendant. *State v. McKinney*, 368 N.C. 161, 166 (2015); *see Lewis*, 372 N.C. at 589. Based on these considerations, this Court holds that the trial court did not err by denying Defendant's motion to suppress evidence seized from the search of his Honda.

## B. Firearm Possession

Second, Defendant argues that § 14-415.1 violates his federal and state constitutional rights to bear arms both facially and as applied to his conduct here. Because this Court's recent decisions preclude our consideration of Defendant's *prima*

*facie* claims and as-applied federal claim,[3] we address only his as-applied state constitutional claim here. *See State v. Nanes*, 912 S.E.2d 202, 207–10 (N.C. Ct. App. 2025); *State v. Ducker*, 917 S.E.2d 266, 269–73 (N.C. Ct. App. 2025), *temp. stay allowed*, 915 S.E.2d 37 (N.C. 2025). And reviewing this latter constitutional claim *de novo*, we also agree with the trial court's denial of Defendant's motion to dismiss on this particular ground.

The North Carolina Constitution recognizes and protects its citizens' respective individual rights to bear arms for self-defense, subject to concealed-carry regulations not at issue here.[4] N.C. Const. art I., § 30 (constitutionalizing right); *State v. Kerner*, 181 N.C. 574, 575 (1921) (recognizing as individual right). Federal courts have generally interpreted the Second Amendment to afford a greater degree of self-defense protection than found in the plain text of our analogous Operative Clause.

---

[3] Defendant filed his brief with this panel on 16 December 2024. Since then, two other panels of this Court have upheld both the federal and state *prima facie* constitutionality of § 14-415.1. *See State v. Nanes*, 912 S.E.2d 202 (N.C. Ct. App. 2025) (affirming constitutionality); *State v. Ducker*, 917 S.E.2d 266 (N.C. Ct. App.) (reaffirming under *stare decisis*), *temp. stay allowed*, 915 S.E.2d 37 (N.C. 2025). The *Ducker* Court further held that § 14-415.1 categorically "regulates conduct outside the Second Amendment's protections." *Ducker*, 917 S.E.2d at 273 (citing *In re Civil Penalty*, 324 N.C. 373, 384 (1989)). Because this Court is "bound by prior decisions" of past panels no matter their recency, we uphold outright the trial court's denial of Defendant's motion to dismiss on at least those three constitutional bases. *Id.* at 8.

[4] In no way does this opinion disturb the Operative Clause's right (and its sole qualification), which predate North Carolina itself. *Compare* Provincial Carol. Const. of 1669 § 116 ("All inhabitants . . . of Carolina . . . shall be bound to bear arms . . . ."), *and* N.C. Declaration of Rights of 1776 § XVII ("[T]he people have a right to bear arms for the defence of the state . . . ."), *with* N.C. Const. of 1868 ("[T]he right of the people to keep and bear arms shall not be infringed . . . ."). *See generally* Robert S. Rankin, *The Government and Administration of North Carolina* 18 (W. Brooke Graves ed., Am. Commonw. Ser. 1955).

*Cf. State v. Tirado*, 387 N.C. 104, 105 (2025) ("lockstep[ping] . . . lesser rights" of state Cruel and Unusual Punishments Clause to heightened protections of federal Eighth Amendment). Because it is "layered in far more complicated ways than is the federal Constitution," Jason Mazzone, *History, Tradition, and Federalism*, 47 Harv. J.L. & Pub. Pol'y 659, 668 (2024) (quotation omitted), our state courts cannot "diminish [ou]r [C]onstitution by interpreting" the scope of its fundamental right to bear arms "in reflexive imitation of the federal courts[ ]," Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law* 174 (2018).[5]

To assess as-applied challenges under our state's Operative Clause, we instead weigh a defendant's conduct among the five factors set forth in *State v. Britt*, 363 N.C. 546 (2009), and clarified in *State v. Johnston*, 224 N.C. App. 282, 298–304 (2012), *aff'd per curiam mem.*, 367 N.C. 164 (2013):

(1) Degree of "violence or the threat of violence" "involved" in the felony convictions responsible for the POFBF conviction at issue on appeal;
(2) Overall "length of time" between the felony and POFBF convictions;
(3) Defendant's history of general "law[-]abiding conduct" prior to the POFBF conviction;
(4) Defendant's "history of responsible, lawful firearm possession" over any "time period when [his] possession of firearms was" lawful; and
(5) Defendant's "assiduous and proactive compliance with" § 14-415.1 and its subsequent amendments.

---

[5]  This Court regularly distinguishes between state and federal constitutional provisions—even when doing so may result in the same outcome for a particular litigant. *E.g.*, *Durham Cnty. DSS v. Wallace*, 295 N.C. App. 440, 450 (2024) ("The adjacent [state] Responsibility Clause expresses what the federal First Amendment only implies . . . ." (citing N.C. Const. art. I, § 14, cls. 1,3)).

*Johnston*, 224 N.C. App. at 301 (first quoting *State v. Whitaker*, 201 N.C. App. 190, 205 (2009), *aff'd on other grounds*, 364 N.C. 404 (2010); then citing N.C.G.S. § 14-415.1; and then citing Act of July 15, 2004, S.L. 2004-186, sec. 14.1, § 14-415.1(a), 2004 N.C. Sess. Laws 737, 737 [hereinafter 2004 Amendment]). "[N]one of the [*Britt*] factors listed above is determinative" when conducting this "relatively straightforward" analysis of "constitutional determination." *State v. Baysden*, 217 N.C. App. 20, 26 (2011), *aff'd by an equally divided court*, 366 N.C. 370 (2013).

They instead "follow logically from" our Supreme Court's heightened standard of review in the Operative Clause context, which "seeks to answer" "the pivotal question . . . [of] whether the statute, as applied to defendant, is 'an unreasonable regulation[ ] not fairly related to the preservation of public peace and safety.' " *Whitaker*, 201 N.C. App. at 210 (Elmore, J., concurring in part, concurring in result in part, and dissenting in part) (quoting *Britt*, 363 N.C. at 550). We note that the *Britt* Court and its progeny, *e.g.*, *id.* at 205 (majority op.); *Nanes*, 912 S.E.2d at 210; *Ducker*, 917 S.E.2d at 273–75, focused their analyses on the 2004 Amendment's abrogation of a felon's statutory "right . . . to . . . possess[ ] . . . a firearm within his own home," sec. 14.1, 2004 N.C. Sess. Laws at 737. Given the general applicability of these cases' principles, though, we see no analytical distinction between the 2004 Amendment and the subsequent 2010 and 2011 amendments to § 14-415.1. *See* Act of July 20, 2010, S.L. 2010-108, sec. 3, § 14-415.1(d)–(e), 2010 N.C. Sess. Laws 414, 417 [hereinafter 2010 Amendment] (exempting nonviolent felons from home-possession

abrogation); Act of June 23, 2011, S.L. 2011-268, sec. 13, § 14-415.1(d), 2011 N.C. Sess. Laws 1002, 1008–09 (clarifying language of 2010 exemption procedure). Taken together, the *Britt* factors support the constitutional application of § 14-415.1 to Defendant's conduct.

*First*, the jury convicted Defendant of only OPFP after deadlocking on the other charges. Absent additional facts, cocaine possession alone does not imply a significant degree of violence for our purposes. *See Britt*, 363 N.C. at 549 ("one count of possession with intent"). And walking "into a pawn shop . . . to sell something" involves no violence whatsoever. As a result, this factor leans towards Defendant's argument when considered in isolation.

*Second*, save one 2011 misdemeanor for resisting a public officer, Defendant's record *prior* to this incident shows no intrinsically violent felony convictions since age 16. Since his "convict[ion] of t[hose] . . . offenses" several "decades ago," Defendant has apparently "been a law-abiding citizen." *Baysden*, 217 N.C. App. at 26. Were we to stop the analysis here, he would likely have a strong case against § 14-415.1's application.

But *third*, his "history of law-abiding conduct *following* his conviction[s]" prior to his trial here is anything but exculpatory. *Id.* at 274 (emphasis added). After his OPFP conviction but before appealing to this Court, Defendant pleaded guilty to two counts of felony first-degree burglary and one count of felony robbery with a dangerous weapon—three of the charges for which a jury of his peers had just

declined to convict him. The strategic soundness of that decision is not for us to decide; his admission to these clearly dangerous felonies so soon after his challenged OPFP weighs heavily in our analysis.

*Fourth*, as referenced above, Defendant also incurred a single felony conviction for cocaine possession prior to these 2023 convictions. Absent additional facts here as well, we "[p]resum[e that] Defendant's firearm possession prior to his conviction was entirely responsible and lawful." *Ducker*, 917 S.E.2d at 274–75.

And *fifth*, Defendant did not "seek vindication" by challenging § 14-415.1's application to his conduct until after his "disarm[ing] by law enforcement" in the wake of his OPFP conviction. *Nanes*, 912 S.E.2d at 210. This factor hinges on whether Defendant "voluntarily disarm[ed hi]msel[f] prior to seeking vindication of [his] right to bear arms," which he did not do so here. *Id.* Defendant instead "waited to bring his challenge [only] after he was arrested and indicted for" the OPFP and POFBF charges. *State v. Bonetsky*, 246 N.C. App. 640, 649 (2016); *accord Johnston*, 224 N.C. App. at 304. He has shown no amount of "assiduous and proactive compliance," *Britt*, 363 N.C. at 551 (citing 2004 Amendment), with either § 14-415.1 or any of its subsequent amendments because he pleaded guilty to three distinct felonies while in "possession of a firearm or other deadly weapon at the time of the[ir] commission[s]," 2011 Amendment sec. 1, § 14-415.4(a)(2)(b).

Based on these considerations, the first and second *Britt* factors weigh in Defendant's favor, while the fourth is neutral at most. But the third and fifth factors

strongly weigh in the opposite direction. Partially excepting the *Johnson* Court's procedural remand for further factfinding, our courts have only ever recognized an unconstitutional application of § 14-415.1 where a litigant proactively seeks to vindicate his rights thereunder—not merely an after-the-fact challenge in the wake of certain felony convictions. *Contrast Johnston*, 224 N.C. App. at 303 (remanding to trial court "to take evidence and make findings as to" first and fourth *Britt* factors), *with, e.g.*, *Britt*, 363 N.C. at 549–50 ("assiduous and proactive compliance"), *and Baysden*, 217 N.C. App. at 29–30 (same). Thus, the *Britt* factors collectively indicate a constitutional application of § 14-415.1 to Defendant's conduct here.

## IV.    Conclusion

For the reasons outlined above, this Court holds that the trial court did not err by denying Defendant's (1) motion to suppress the evidence seized from his Honda for lack of probable cause and (2) motion to dismiss the POFBF charge on the grounds of N.C.G.S. § 14-415.1 *prima facie* and as-applied unconstitutionality.


NO ERROR.

Chief Judge DILLON and Judge CARPENTER concur.